## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**JAMES WELSEY SCOTT**                                    **PETITOINER**

**V.**                                    **CIVIL ACTION NO. 2:18CV156 TBM-LGI**

**JACQULINE BANKS**                                    **RESPONDENT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

James Scott seeks federal habeas relief under 28 U.S.C. § 2254. After a review of the entire record and all the applicable law, the undersigned recommends that his petition be dismissed with prejudice.

#### Factual and Procedural Background

In 2014, a jury found Scott guilty of attempted rape, kidnapping, and burglary of a dwelling. He was sentenced to three consecutive life sentences without the possibility of parole, all to be served in the custody of the Mississippi Department of Corrections (MDOC). The relevant facts are accurately described in the state court's opinion and repeated verbatim here.[1]

On July 3, 2009, Scott broke into the home of Danielle Landry in Hattiesburg, Mississippi. Scott entered the home, grabbed Landry, and dragged her from the living room toward the bedroom. Landry believed Scott intended to rape her, and she offered money to Scott in exchange for her release. Scott momentarily released Landry, and she

---

[1] *Scott v. State*, 231 So. 3d 1024, 1030 (Miss. Ct. App. 2016), *aff'd*, 231 So. 3d 995 (Miss. 2017), *reh'g denied*, Feb. 14, 2017. Internal headings and citations have been omitted.

attempted to escape through a window. Scott then dragged Landry back to the kitchen, looked through her purse, and found five dollars.

Landry then urged Scott to take her to an ATM in order to pay him more money. Scott took Landry to her car, forced her into the passenger seat, and drove from the house.  At one point, Scott slowed the car and Landry opened the door to flee.  Scott held onto Landry while she struggled then eventually freed herself. Landry ran to a neighbor's house for help as Scott drove away.  Police later recovered Landry's car [in Hinds County, Mississippi].

Scott alleges that the police issued an arrest warrant on July 3, 2009, and he turned himself in to police in October or November 2009. The Mississippi Department of Corrections (MDOC) revoked an unserved sentence from a previous conviction, and Scott remained in prison until February 6, 2011.

On September 26, 2011, a Forrest County grand jury indicted Scott for attempted rape, kidnapping, and burglary of a dwelling stemming from the July 3, 2009 incident. On March 14, 2012, Scott was arraigned. Scott then filed a motion for recusal of the trial judge on April 12, 2012. No ruling occurred on that motion, but on September 6, 2012, the trial judge recused on his own motion. On September 20, 2012, the Mississippi Supreme Court appointed a special judge.

No further action in this case appears in the record until March 24, 2014, when Scott filed a *pro se* motion to dismiss the case based on speedy-trial violations. Scott filed a similar motion on May 2, 2014, and his appointed counsel filed a third motion to dismiss on August 14, 2014. The trial court denied the third motion and

conducted the trial on August 18 and 19, 2014. The jury returned a guilty verdict on all three counts. *Scott v. State*, 231 So. 3d 1024, 1030 (Miss. Ct. App. 2016), *aff'd,* 231 So. 3d 995 (Miss. 2017), *reh'g denied*, Feb. 14, 2017.

Aggrieved and represented by counsel, Scott appealed his conviction alleging evidentiary errors, speedy trial violations, and sufficiency and weight-of-the evidence claims. He also filed a supplemental appellate brief, *pro se*, re-urging his speedy trial claim and asserting the following issues: the trial court denied the right to confrontation, and the State knowingly proffered perjured testimony and suppressed evidence. The Mississippi Court of Appeals affirmed his convictions on June 21, 2016, and denied his subsequent petition for rehearing. *Id.* On June 15, 2017, the Mississippi Supreme Court granted Scott's petition for writ of certiorari. In a split 4-4 decision issued on November 30, 2017, the court affirmed the Mississippi Court of Appeals decision, with the dissenting justices issuing a separate written opinion. *Scott*, 231 So. 3d 995. Scott filed a Petition for Writ of Certiorari with the United States Supreme Court, which was denied. Thereafter, Scott initiated state post-conviction proceedings alleging trial court errors, speedy trial violations, denial of his right to an initial appearance, and ineffective assistance of counsel. The Mississippi Supreme Court denied the motion on June 25, 2018, finding the issues raised therein were barred by *res judicata* or without merit.

On August 23, 2018, Scott filed the instant petition for federal habeas corpus relief raising the same claims that were raised in state court proceedings:

**Ground One:**      Whether Petitioner was denied his constitutional right to an initial appearance?

3

| | |
|---|---|
| **Ground Two**: | Whether Petitioner's statutory right to a speedy trial was violated? |
| **Ground Three**: | Whether Petitioner's constitutional right to a speedy trial was violated? |
| **Ground Four**: | Whether the trial court erred in denying Petitioner's request for a continuance and allowing untimely-disclosed D.N.A. evidence? |
| **Ground Five**: | Whether the trial court erred in granting instruction S-11A? |
| **Ground Six**: | Whether the trial court failed to instruct the jury on the essential elements of the crime under counts I and III? |
| **Ground Seven**: | Whether the trial court violated Petitioner's right to a complete defense? |
| **Ground Eight**: | Whether the evidence was insufficient to support the verdict, or alternatively, whether the verdict was against the overwhelming weight of the evidence? |
| **Ground Nine**: | Whether Petitioner was denied effective assistance of counsel for: |

        i.     Failure to impeach witness with prior inconsistent statement;

        ii.     Failure to object to jury instructions not defining the elements of counts I and II;

        iii.     Failure to provide a basic defense, failure to investigate;

        iv.     Failure to present an abandonment instruction;

        v.     Failure to provide Petitioner with relevant evidence he needed to make an informed decision about whether to accept a negotiated plea;

        vi.     Allowing the prosecution to present false evidence;

        vii.     Failure to hire a D.N.A. expert for Petitioner's defense.

| | |
|---|---|
| **Ground Ten**: | Cumulative Error. |

Having reviewed the record and all the applicable law, the undersigned submits that Scott is not entitled to relief and the instant petition should be dismissed with prejudice.

### Discussion

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. §2244(d), precludes this Court from granting Petitioner federal habeas corpus relief on claims adjudicated on the merits unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This court reviews questions of law as well as mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1) of the AEDPA, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief.  *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts.  *Id.*  "[C]learly established Federal law includes only the holdings of the Court's decisions," *White v. Woodall*, 572 U.S. 415, 419, 134 S. Ct. 1697, 188 L. Ed. 2d 698 (2014) (internal citation and quotation marks omitted).  Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case."  *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002).  The state court's decision must be objectively unreasonable, not

merely erroneous or incorrect.  *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 175 L. Ed. 2d 738 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013).  Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect."  *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012).  Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence.  *See* 28 U.S. C. § 2254 (e)(1).

## Ground One

In ground one, Scott claims that he was denied his constitutional right to an initial appearance, as provided by Mississippi Uniform Circuit and County Court Rule 6.03.[2] The rule, which was in effect at the time of Scott's arrest and trial, provided that "every person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer . . . for an initial appearance." *Young v. State*, 236 So. 3d 49, 58 (Miss. 2017).  The primary purpose "of the initial appearance is to secure to the accused

---

[2] Effective July 1, 2017, this rule was replaced by the Mississippi Rules of Criminal Procedure 5.2.

prompt . . . advice of his right to counsel by a judicial officer . . . . " *Id.* (internal quotation marks and citation omitted).

Scott appears to have raised this precise argument for the first time in his motion to amend his state court post-conviction motion, filed formally just days before the Mississippi Supreme Court issued its order denying post-conviction relief. If granted, it would have brought the total number of issues raised on post-conviction review to nine, excepting his cumulative error claim. The record reflects, however, no ruling granting or denying the motion to amend, though it was initially attached as an exhibit to his post-conviction motion. Rather, the court's order of denial notes that Scott raised only eight issues, which were barred by *res judicata* or without merit. Assuming *arguendo* this issue was properly presented and considered on the merits on post-conviction review, the undersigned submits that the state court's rejection of it was not contrary to, or an unreasonable application of clearly established federal law.

As previously noted, Scott was on Earned Supervised Release ("ERS") for a previous robbery conviction in Forest County, Mississippi when he committed the alleged crimes. The ERS program "is operated exclusively by the MDOC" and though released from custody, Scott "retain[ed] inmate status and remain[ed] under the MDOC's jurisdiction." *Sobrado v. State*, 168 So. 3d 1114, 1118 (Miss. Ct. App. 2014) (citing Miss. Code Ann. § 47–5–138(6) (Supp.2013)). One of the conditions of his supervised release was that he would not commit another federal, state, or local crime. He was also to remain within the boundaries of Forest County, Mississippi. Though it is unclear when it was first asserted, the undersigned notes that Scott's defense has consistently been that

7

the events of July 3, 2009, were the result of a drug deal gone bad—also an ERS violation.

Although there are indications that an arrest warrant was issued or at least, an application filed, on or around July 3, 2009, no such warrant appears in the record.[3]  The record does reflect that on July 15, 2009, MDOC issued a rule violation report indicating that Scott was wanted by the Hattiesburg Police Department on charges of burglary, attempted rape, and kidnapping.  On or around November 29, 2009,[4] Scott turned himself in to authorities in Hinds County, Mississippi, for questioning.  At a revocation hearing conducted on February 22, 2010, Scott was found guilty of failing "to abide by the conditions of release."  In addition to the new charges, the hearing officer notes that Scott had absconded from supervision.  As a result, Scott was removed from the ERS program and served the remainder of his prior sentence in MDOC custody until it expired on February 6, 2011.  On September 26, 2011, a Forest County grand jury formally indicted Scott on the charges in this case and a capias warrant issued that same date.  Scott was subsequently arrested on January 25, 2012, nearly a year after completing his revocation sentence. At an arraignment conducted on March 14, 2012, Scott was represented by counsel, waived formal reading of the indictment, and pled not guilty.  A privately retained attorney entered an appearance on his behalf on April 11, 2012.  Over the course

---

[3] The rule violation report references a warrant, and the detective assigned to the case testified that he completed an application for an arrest warrant for Scott on July 3, 2009. ECF No 8-5, pp. 309-11; ECF No. 8-7, p. 19.

[4] This date is confirmed by MDOC's housing report. ECF No. 7-7, p. 3.

of the state court proceedings, Scott would have four different attorneys.  The second surrendered his law license four months before trial, while the third and the trial judge initially assigned recused themselves due to a conflict.[5]

In evaluating Scott's initial appearance claim, the undersigned considers his legal status and detention before and after indictment.  With regard to his post-indictment detention beginning in January 2012, the record confirms that he was not provided an initial appearance.  This was not a constitutional violation, however.  The Fourth Amendment requires a prompt judicial determination of probable cause "as a prerequisite to extended restraint of liberty following arrest."  *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975); *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991).  "Judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *McLaughlin*, 500 U.S. 44.  A person arrested pursuant to a warrant or indictment, however, is not constitutionally entitled to a separate judicial probable cause determination. *Id.* at 53.  Nor was Scott, as an indicted detainee, entitled to an initial appearance or a preliminary hearing under state law.  *See* Mississippi Uniform Circuit and County Court Rule 6.05 (defendant who has been indicted by a grand jury shall not be entitled to an initial appearance or preliminary hearing). [6]

---

[5] Upon information and belief, the trial judge and the father of Scott's third counsel prosecuted Scott's previous conviction.

[6] Effective July 1, 2017, this rule was replaced by Rules 5.2 and 6. 1 of the Mississippi Rules of Criminal Procedure, which provides that a defendant who has been indicted by a grand jury is not entitled to a preliminary hearing.

As for Scott's pre-indictment detention beginning in November 2009, while there was probable cause for his arrest, it is unclear whether Scott was arrested in connection with the underlying charges when he turned himself in.  The rule violation report is the only document of note, and it cites an independent basis for his pre-indictment detention. In any event, because Scott is now incarcerated pursuant to a valid conviction on the underlying charges, he cannot challenge his conviction on the basis that he was arrested in 2009 without a probable cause determination. *See, e.g., Montoya v. Scott*, 65 F.3d 405, 421 (5th Cir. 1995).  The United States Supreme Court has long held that "a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119.

A person who is properly arrested but held in pre-trial detention for a prolonged period of time without a hearing, however, may bring a Fourteenth Amendment claim for deprivation of procedural due process. *Jauch v. Choctaw Cty.*, 874 F.3d 425, 429–30 (5th Cir. 2017); *Jones v. City of Jackson*, 203 F.3d 875, 880–81 (5th Cir. 2000).  To the extent Scott claims that he should have been brought before a judicial officer before his arraignment, any such claim would, presumably, only be viable with respect to his post-indictment detention, i.e., the period between his arrest on the indictment and arraignment in 2012. *See generally Jauch*, 874 F.3d 425.  Indeed, after Scott completed his revocation sentence, he was no longer detained.  He remained free for nearly a year.  When he was arrested pursuant to the indictment in January 2012, 50 days passed before his arraignment.  Though it was not within 30 days as provided by Mississippi Uniform

Circuit and Court practice,[7] Scott has not shown that it was so excessive as to establish a due process violation. *Id.* at 429–435 (96-day detention without an arraignment or other court appearance is a due-process violation).

Though Scott complains that his revocation hearing was not held within the timeframe of MDOC policy, "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Supervised releasees and parolees do not enjoy the "full panoply" of constitutional protections to which criminal defendants are entitled. *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972).[8] *See Hays v. Granderson*, No. 4:15CV51-NBB-DAS, 2017 WL 3584915, at *3 (N.D. Miss. Aug. 18, 2017) (status as a supervised releasee "changes the calculus from the 48–hour burden-shifting standard of *Gerstein and McLaughlin* (which applies to normal suspects) to the much lower bar of "as promptly as convenient" after arrest (for parolees suspected of violating the terms of their conditional release)). Sufficient evidence supported Scott's

---

[7] Rule 8.01 of the Uniform Rules of Circuit and County Court Practice, which was in effect at the time of Scott's arraignment, provided that an "[a]rraignment unless waived by the defendant, shall be held within (30) days after the defendant is served with the indictment."

[8] For our purposes here, courts do not distinguish between individuals on parole, probation or supervised release. *See Morris v. State*, 66 So. 3d 716, 719 (Miss. Ct. App. 2011) ("The period of earned-release supervision shall be conducted in the same manner as a period of supervised parole.") (quoting at § 47–5–138(6)); *United States v. Garcia-Avalino*, 444 F.3d 444, 447 (5th Cir. 2006) ("We do not distinguish between parolees and those on supervised release for the purpose of determining their constitutional rights").

revocation, and the record does not reflect that he was prejudiced by any delay in holding his revocation hearing.

To the extent this claim was considered on the merits, the Mississippi Supreme Court's rejection of it was not an unreasonable application or contrary to clearly established federal law.

### Grounds Two and Three

In grounds two and three, Scott asserts that his state statutory and constitutional rights to a speedy trial were violated because 5 years passed between the crime and trial. To be precise, 4 years, 8 months, and 21 days passed from the date Scott turned himself in until trial, 2 years, 10 months and 24 days of which were between his indictment and trial. As a preliminary matter, however, this court need only concern itself with whether his constitutional right to a speedy trial was violated because a violation of a state speedy-trial law by a state court is non-cognizable on habeas review. *Millard v. Lynaugh*, 810 F.2d 1403, 1406 (5th Cir. 1987).

A defendant's constitutional right to a speedy trial does not attach at the time of the crime, but "attaches at the time of arrest or indictment, whichever comes first." *Dillingham v. United States*, 423 U.S. 64, 65, 96 S. Ct. 303, 46 L. Ed. 2d 205 (1975). In making this assessment, courts consider whether the defendant is "'formally charged with a crime or actually restrained in connection with that crime.'" *Cowart v. Hargett*, 16 F.3d 642, 646 (5th Cir. 1994) (quoting *Dickerson v. Guste*, 932 F.2d 1142, 1144 (5th Cir. 1991) (5th Cir. (1991)). Once the constitutional right to a speedy trial accrues, a determination of whether the right has been violated requires a careful balancing of four

12

factors: (1) the length of delay, (2) the reason for the delay, (3) the assertion of the right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *Leachman v. Stephens*, 581 F. App'x 390 (5th Cir. 2014). No single factor is determinative in the analysis, and AEDPA "requires us to give the widest of latitude to a state court's conduct of its speedy-trial analysis." *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011).

Balancing the four *Barker* factors in this case, the Mississippi Court of Appeals concluded that Scott's speedy trial claim lacked merit. The undersigned submits this finding was not contrary to or an unreasonable application of clearly established federal law.

### ***Length of the delay***

To trigger a speedy-trial analysis, a defendant must show that the delay "between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States*, 505 U.S. 647, 651–52, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). "If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.*

In assessing the length of the delay in this case, the Mississippi Court of Appeals excluded from its calculation Scott's pre-indictment detention because it found the record did not "fully support Scott's contention that he was ***first arrested*** in late 2009 ***for this crime***." *Scott*, 231 So. 3d at 1043 (emphasis added). The court reasoned that Scott's speedy trial rights attached in September 2011 when he was formally indicted on the

13

underlying charges. Given the chronology of events, this was not an unreasonable assessment. Several courts have held that a defendant's right to a speedy trial on charges committed while he was on parole attach, not when he is taken into custody for violating parole, but when the indictment on those charges is returned. *Cowart*, 16 F.3d at 645; *Coleman v. State*, 725 So. 2d 154 (Miss. 1998); *United States v. Dean*, 528 F. Supp. 2d 637, 638 (W.D. Tex. 2007); *U. S. ex rel. Randazzo v. Follette*, 282 F. Supp. 10, 14 (S.D.N.Y. 1968), *aff'd*, 418 F.2d 1319 (2d Cir. 1969) ("To weigh retaking of a parole(e) on scales calibrated for standard cases of arrest and probable cause is to compare incomparables."); *Story v. Rives*, 97 F.2d 182, 188 (D.C. Cir. 1938) ("it cannot be said that the retaking of a prisoner who is already within the legal custody of the authorities constitutes an arrest within the meaning of the constitutional provisions.").

However calculated, the delay in this case is presumptively prejudicial, and this factor was rightly weighed in Scott's favor. As it exceeded one year, it was sufficient under both state and federal law to trigger full consideration of the other *Barker* factors. *See Amos*, 646 F.3d at 206 ("bare minimum required to trigger a *Barker* analysis is one year" in the Fifth Circuit); *State v. Woodall*, 801 So.2d 678, 682 (Miss. 2001) (the Mississippi Supreme Court has generally held that a delay of eight months or longer is "presumptively prejudicial.") (citations omitted). This presumption, however, does not "warrant an immediate conclusion that the defendant has been denied his Sixth Amendment right to a speedy trial." *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993). "[O]nly in cases in which the post-indictment delay lasted at least five years" will prejudice from delay rise to this level. *United States v. Serna-Villarreal*, 352 F.3d 225,

232 (5th Cir. 2003). Such was not the case here. Accordingly, as further set forth herein,

Scott must make an affirmative showing that he was prejudiced by the pre-trial delay.

### *Reason for the delay*

The second *Barker* factor primarily considers "which party is more responsible for

the delay." *Law v. Stephens*, 536 F. App'x 409, 413 (5th Cir. 2013). Not all reasons for

delay are assigned equal weight. "At one extreme, a deliberate delay to disadvantage the

defense is weighted heavily against the state. At the other end of the spectrum, delays

explained by valid reasons or attributable to the conduct of the defendant weigh in favor

of the state. Between these extremes fall unexplained or negligent delays, which weigh

against the state, 'but not heavily.'" *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th

Cir. 2008) (internal citations and quotations marks omitted).

Having excluded the pre-indictment period from its calculation, the Mississippi

Court of Appeals considered the ***first*** delay to be the nearly 6-month period between

Scott's indictment and arraignment. Because no explanation was provided for this delay,

it was weighed against the State. The state court found the ***second*** delay—the 30-day

period between Scott's arraignment and his motion to recuse the trial judge—was "likely

attributable to Scott" because the recusal motion was not filed until he retained counsel.

The ***third*** delay—the 5-month lapse between the recusal motion and appointment of a

new trial judge— was deemed neutral. The ***fourth*** delay—the 18-month period from the

appointment of a new trial judge until the appointment of Scott's first court-appointed

attorney—was attributed to Scott. In so doing, the court cited the repeated assurances

from Scott's then counsel that "either a guilty plea would be entered, or he would work

15

with the trial court to set a trial date."[9]  Whether publicly assigned or privately retained, "because 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant." *Vermont v. Brillon*, 556 U.S. 81, 90–91, 129 S. Ct. 1283, 1290–91, 173 L. Ed. 2d 231 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).

Lastly, the court weighed the ***final*** delays in the last two months before trial equally against both sides.  On the same date that Scott's third attorney withdrew due to conflict, the State moved for a continuance to obtain DNA samples for comparison with blood found at the crime scene.  Both sides thereafter agreed to a one week's extension from August 13, 2014 to August 19, 2014.

Based on the foregoing, the Mississippi Court of Appeals concluded that while some delays were neutral or weighed slightly against the State, most of them were attributable to Scott.  *Scott*, 231 So.3d 1021, 1043.

However, Scott argues that the state court should have considered the reasons for the pre-indictment delay after he turned himself in to authorities in November 2009.  Had the court done so, he claims that this factor would have weighed heavily against the State because the prosecution admitted during opening statement that the police department

---

[9] The record reflects that Scott's court-appointed lawyers were responsible for moving the case forward and bringing it to trial.

dropped the ball in failing to present the case to the district attorney's office.   However,
"[t]here has been no showing that the state intentionally delayed the proceedings in
this case. Unexplained or negligent delay is weighed against the state, but not
heavily." *See United States v. Avalos*, 541 F.2d 1100, 1111 (5th Cir. 1976).   Even if the
Court were to agree that this reason was sufficient to weigh this *Barker* factor in Scott's
favor, it is not dispositive. It must be considered in conjunction with the other factors.

### *Assertion of the right*

The third factor is whether Scott diligently asserted his right to a speedy trial.
Vigorous and timely assertions of this right "receive strong evidentiary weight, while
failure to assert the right will make it difficult for a defendant to prove that he was denied
a speedy trial." *Amos*, 646 F.3d at 207 (internal quotation marks omitted).   "This is
because the vigorousness with which a defendant complains about the delay will often
correspond to the seriousness of the deprivation." *Goodrum*, 547 F.3d at 259 (citing
*Barker*, 407 U.S. at 531–32).

The record in this case reflects that Scott filed two motions to dismiss, *pro se*,
alleging that his right to a speedy trial had been violated: the first on March 24, 2014,
more than two years after his indictment, and the second on May 2, 2014.  With the
assistance of counsel, he filed a third motion on August 14, 2014—five days before trial.
Consistent with federal law, the state court weighed Scott's failure to raise his speedy
trial concern sooner against him. *Scott*, 231 So. 3d at 44. *See Speer v. Lumpkin*, 824 F.
App'x 240, 245 (5th Cir. 2020) (weighing factor against defendant because he waited
nearly 22 months, "well beyond the delay in other cases where we have found this factor

to weight against the defendant).  Scott claims, however, that the court failed to consider that he filed two speedy trial motions prior to March 2014—one in June 2010 and the other in May 2013.  Neither appear in the record, however.  Moreover, Scott was incarcerated pursuant to his probation revocation in 2010 and had yet to be formally indicted.[10]

Even if the Court were to credit Scott with these additional motions, the Fifth Circuit has "long warned that a motion to dismiss, as opposed to a request for a prompt trial, is 'not a valid demand for a speedy trial.'"  *Speer*, 824 F. App'x at 245 (quoting *Cowart*, 16 F.3d at 647; *see also United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009) ("A motion to dismiss the indictment, particularly when, as here, it is filed over two years after the indictment, is not evidence of a [desire to be tried promptly.]").  Because the Mississippi Court of Appeals rightly observed that "a demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for speedy trial," this factor was properly weighed against Scott.  *Scott*, 231 So. 3d at 1043 (*quoting Perry v. State*, 637 So. 2d 871, 875 (Miss. 1994).

### *Prejudice*

The final element in the *Barker* analysis is whether Scott was prejudiced by the pre-trial delay.  Of all the factors, the prejudice factor is "the most difficult to evaluate qualitatively and quantitatively." *United States v. Greer*, 655 F.2d 51, 53 (5th Cir. 1981).

---

[10] The undersigned notes that Scott filed a petition for writ of mandamus in the Mississippi Supreme Court requesting that it compel the lower court to rule on his speedy-trial motions filed in June 2010 and May 2013.  The petition was denied with prejudice because Scott failed to show, *inter alia*, that the motions had been filed.

Because the first three factors do not weigh heavily in his favor, Scott must make an affirmative showing of actual prejudice. *Laws*, 536 F. App'x at 414; *Amos*, 646 F.3d at 208. While the pre-trial delay was sufficient to require a full *Barker* analysis, it was not so lengthy as to relieve Scott of this burden. *See United States v. Frye*, 372 F.3d 729, 738 (5th Cir. 2004) (recognizing that federal courts generally presume prejudice only when the delay exceeds five years); *Doggett,* 500 U.S. 647, 657 (finding 8 ½-year delay caused solely by government negligence was long enough that affirmative proof of particularized prejudice was not essential). Prejudice may be established in three ways: (1) proof of oppressive pretrial incarceration; (2) proof of anxiety and concern of the accused; and (3) proof that the defense was impaired by the delay. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Speer*, 824 F. App'x at 245 (citing *Barker*, 407 U.S. at 532).

Though Scott states that he suffered anxiety and oppressive incarceration for five years after turning himself in, the Mississippi Court of Appeals did not expressly consider the first two factors in its decision. That said, Scott was not detained for five years. For over 14 months, from November 2009 to February 2011, he was serving his revocation sentence. Once that sentence expired, nearly a year passed before Scott was incarcerated again. Any anxiety or oppressive incarceration he experienced during this time period cannot be attributed solely to the charges in this case. *See Cowart*, 16 F.3d at 647 ("As it was proper for Cowart to be returned to the state penitentiary for parole violations, it was inappropriate for the magistrate judge to find prejudice to Cowart from his

confinement.").  Scott's generalized expressions of anxiety and concern post-indictment, moreover, "amount to little more than a nominal showing of prejudice."  *Goodrum*. 547 F.3d at 263.

The heart of the prejudice inquiry is this:  whether the pre-trial delay impaired Scott's defense.  *Speer*, 824 F. App'x at 246.  Scott appears to assert that the loss of certain evidence—the 911 recording, written statements, and the victim's clothing—was inherently prejudicial.  However, such evidence must be considered in conjunction with the evidence that was presented at trial.  Because Scott faced three charges—burglary, attempted rape, and kidnapping—the undersigned considers each in turn.

### a. Burglary of a Dwelling

Scott does not articulate, must less demonstrate, how the loss of evidence impaired his burglary defense.  In state court proceedings, Scott claimed that he went to the victim's home to recover drug money and was presumably, without objection, invited inside.  The physical altercation that ensued was the result of a "drug deal gone bad."  However, the evidence collected that night and presented at trial indicated a break-in. The victim testified that she was sleeping on her living room couch when she heard glass breaking from her kitchen door, and saw a man entering, who she later recognized as Scott.  Both the responding officer and the investigator assigned to the case testified that they saw broken glass in the kitchen door and glass on the kitchen floor.  Police photos taken that night corroborate their accounts.  Such evidence illustrates an unlawful entry, not an invitation.

### b.  Attempted Rape

Scott's impairment argument is perhaps most relevant to the attempted rape charge.  Under state law, attempt requires "(1) an intent to commit a particular crime; (2) a direct ineffectual act done towards its commission, and (3) failure to consummate its commission." *Pruitt v. State*, 528 So.2d 828, 830 (Miss. 1988).  At trial, when asked why she believed that Scott intended to rape her, the victim testified that Scott came toward her, was "grabbing all over [her]," and "tearing at [her] clothes" as they struggled down the hallway toward her bedroom, all the while saying: "that ass is mine;" "I got that ass, bitch;" and, "you're mine now."  *See Harden v. State*, 465 So.2d 321, 325 (Miss.1985) (lewd suggestions coupled with physical force constituted sufficient evidence to establish intent to rape).  The victim's testimony was not only consistent with the accounts she gave to the responding officer and an eyewitness at the scene, but it was corroborated by their testimonies at trial.  Photographic evidence taken by police that night indicated blood drop stains in the hallway connecting the living room to the bedroom.

Notwithstanding, Scott claims that the loss of the photo lineup, the 911-recording, written statements, and the victim's clothing impaired his ability to defend this charge.  In light of the evidence establishing his guilt, it is more likely that this evidence would have been inculpatory, not exculpatory.  *Robinson*, 2 F.3d at 571.

Scott fails to show, for example, how the loss of the photo lineup was prejudicial.  His defense was that he never committed the alleged acts, not one of mistaken identity.  He admitted to being in the home and left both his wallet and DNA at the scene.  There are record indications that the victim identified him in the photo lineup the next day.

21

As to the 911-recording, the prosecution asserted at the speedy trial hearing that the Hattiesburg Police Department did not keep 911 recordings and, even if it did, the victim denied placing the 911 call.  Even if Scott had been able to obtain a copy of the 911 recording, he does not demonstrate what the 911 recording would have shown, or how it would have been exculpatory.

Scott also fails to show how the loss of written statements was an impairment.  He does not, for example, identify any lost witnesses with any particularity, nor specify what they would have said.  Rather, his argument in this regard relies principally on the loss of the victim's written statement.  He specifically cites to an inconsistency between her testimony and the detective's police report,[11] i.e., that Scott had gotten on top of her on the bed.

At trial, the victim denied making this statement.  She testified that Scott only threw her on the bed.  Scott asserted at trial and on direct appeal that the victim's written statement may have revealed other inconsistences.  But the state court found this argument was entirely speculative, as Scott did "not know the contents of Landry's written statement to demonstrate any inconsistency." *Scott*, 231 So. 3d at 1044.  The undersigned would further note that Scott also had the opportunity to cross examine the responding officer to whom the statement was made, and the eyewitness who spoke to the victim after the assault. Their testimonies did not reveal any additional inconsistencies.

---

[11] The trial court, however, excluded Detective Rayner's police report from the evidence.

Lastly, Scott argues that his defense was impaired by the loss of clothing that the victim was wearing that night.[12]  As noted above, the victim testified that **_one_** of the reasons she believed Scott was attempting to rape her was because he was "trying to rip my shirt off."[13]  However, the victim testified that the shirt was never turned over to law enforcement because her mother threw it away when she brought her new clothes to the hospital.  That the shirt was not preserved is concerning, but Scott cannot demonstrate that it would have been recoverable had he been brought to trial sooner.  Moreover, it is not clear the shirt would have been exculpatory.  The responding officer testified that the victim's clothing was torn upon his arrival.

At best, the undersigned submits that Scott has articulated reasons that his defense to the attempted rape charge *might* have been impaired by the loss of the victim's written statement and clothing; however, the "possibility of prejudice is not enough, especially when Scott has the AEDPA burden of showing that the state could not have reasonably ruled against him." *Speer,* 824 F. App'x at 246 (internal quotation marks and citation omitted).  While there were no eyewitnesses to what transpired in the victim's home, a victim's testimony alone is sufficient to support a sex crime conviction, as long as it is not discredited or contradicted by other evidence**.** *Pitts v. State*, 291 So. 3d 751, 758 (Miss. 2020).  Though Scott maintains that he went to the victim's home to conduct a

---

[12] In pre-trial hearings, the prosecution noted that there was clothing in the victim's car when it was recovered. However, the victim testified that she sold the vehicle after it was recovered by police. At trial, the defense focused on the shirt that the victim was wearing that night.

[13] ECF No. 8-4, pp. 42-43.

drug deal, not rape, one could accept this contention and still find sufficient evidence that he committed the alleged crimes upon arrival. *Cowart*, 16 F.3d at 648 (observing that the purpose for going to the victim's house was immaterial to the crimes that transpired upon arrival).

### c. Kidnapping

As to the kidnapping charge, the defense insinuated at trial that the victim willingly went with Scott because it was her suggestion to go to an ATM. The victim testified, however, that she made this suggestion because she thought it was her "only way to get out of" the situation, and to dissuade Scott from raping her. Prior to that point, she had attempted to escape through the window and Scott, who had put her in a chokehold more than once, pulled her back in. Once she made the ATM suggestion, Scott "forced" her to the front door, opened her car door, and pushed her inside. As they took off, she attempted to jump from the car, but Scott grabbed her throat and held onto her until she freed herself and rolled onto the street.

While there were no eyewitnesses to what transpired inside the victim's home, a witness did see the victim and Scott as they were leaving. Kristopher Molley testified that he was dropping off his coworker at a nearby home when he heard yelling and screaming. When he looked in his rearview mirror, he saw the victim in "a scuffle" with a tall man. The two then got into a car and took off, nearly hitting his car. Molley testified that he then saw the victim jump out and roll onto the street. In assessing the sufficiency of the evidence, the state court found that the "confinement in Landry's vehicle, coupled with Scott's restraint of Landry, satisfied the elements of kidnapping

such that a jury could reasonably conclude Scott kidnapped Landry." *Scott*, 231 So. 3d at 1040. Scott offers neither argument nor evidence that, had the trial taken place sooner, Molley or any other witness would have testified favorably for him on the kidnapping charge. In fact, he does not explain how he came to leave the scene, nor does he account for his actions or whereabouts after the "physical altercation" ensued inside the home. *Compare Russell v. Denmark*, No. 3:14-CV-225-CWR-LGI, 2021 WL 1137999 (S.D. Miss. Mar. 24, 2021) (finding defense impaired where defendant alleged that alibi witness, who had picked him up before the shooting occurred, could no longer be located because of the delay in trial).

Given the evidence presented at trial establishing guilt, fair-minded jurists could conclude that Scott's defense was not prejudiced by the loss of evidence to the extent necessary to constitute a speedy trial violation on any of these charges. *Robinson*, 2 F.3d at 570; *Roach v. Jenkins*, No. 3:07CV198 DPJ-JCS, 2009 WL 3711549 (S.D. Miss. Nov. 3, 2009) (loss of evidence due to extended pretrial incarceration was not prejudicial where eyewitness observed defendant leaving the victims' house with a television set in hand, he was almost immediately apprehended, a television was found in the vehicle he was driving, and the victim's credit card was in his shirt pocket). The state court's rejection of Scott's speedy trial claim was not contrary to, or an unreasonable application of clearly established federal law.

**Ground Four**

On the day the trial was to begin, Scott moved for a continuance. In ground four, he claims that the trial court's failure to grant his motion entitles him to relief. Two

months before trial, the prosecution filed a motion to compel testing of Scott's DNA for

comparison with blood stain samples found at the crime scene.  The motion was filed in

response to indications from defense counsel at the time that Scott, despite admitting that

he was in a physical altercation with the victim on the night in question, would challenge

the adequacy of the investigation, including the lack of DNA testing.[14]  The motion to

compel was granted, but the DNA analysis was not completed until the day before trial.

The morning of trial, defense counsel argued that the evidence should be suppressed

because of the late disclosure, or in the alternative, that the trial be continued so that she

could adequately prepare and respond.  The evidence was ultimately admitted, however,

and Scott's assignment of this error was rejected on direct appeal.  The court of appeals

reasoned that Scott had known for two months that the State had sought his DNA, and

that any resulting error was harmless because the evidence was cumulative.  In addition

to the DNA analysis, "Scott's wallet, with his identification and Social Security card,

were found."  *Scott*, 231 So. 3d at 1038.

It is well-established that a request for a continuance is a matter within the trial

court's discretion.  *Avery v. State of Alabama*, 308 U.S. 444, 446, 60 S. Ct. 321, 84 L. Ed.

377 (1940).  "To warrant federal habeas relief, the denial of the continuance must have

been not only an abuse of discretion but also 'so arbitrary and fundamentally unfair' that

it denied [the petitioner] due process . . ." *McFadden v. Cabana*, 851 F.2d 784, 788 (5th

Cir. 1988), *cert. denied*, 489 U.S. 1083 (1989).  Scott must show "a reasonable

---

[14] ECF No. 8-3, p.26.

probability that the granting of a continuance would have permitted him to adduce evidence that would have altered the verdict." *Id.* at 788.  For all the reasons set forth by the Mississippi Court of Appeals, Scott has not met this burden.  No relief is warranted on this claim.

### Grounds Five and Six

In grounds five and six, Scott argues that he is entitled to habeas relief because the trial court allowed erroneous jury instructions.  Challenges to jury instructions rarely form a basis for federal habeas corpus relief.  *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993).  The inquiry is not "whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude." *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (quoting *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986)).  A habeas petitioner must establish "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973).  Even when an instruction is deemed erroneous, habeas corpus relief is not warranted when the error was harmless.  A petitioner must show that the instruction had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (citation omitted).  Scott has not met this burden here.

For example, he alleges in ground five that the trial court's kidnapping instruction was erroneous because it impermissibly commented on the weight of the evidence by

27

including the following language: "confinement and asportation (which means the moving of a victim against their will), are sufficient to support [k]idnapping without regard to the distance moved, however slight, or time of confinement, no matter how short." The Mississippi Court of Appeals noted that while "asportation is not a necessary element of the crime of kidnapping," the instruction was a proper recitation of state law as it included all the elements of kidnapping—confinement of the victim against his or her will. Scott offers neither argument nor evidence that this instruction violated a constitutional right or had a "substantial and injurious effect in influencing the jury's verdict." *Id.*

In ground six, Scott challenges the attempted rape and burglary instructions given at trial. According to Scott, both instructions were erroneous because they failed to include the definition of rape, specifically the language "forcible sexual intercourse" as defined by Miss. Code Ann. § 97-3-65(4)(a) (Rev. 2014). The state court of appeals noted that this argument was procedurally barred because Scott failed to raise a contemporaneous objection to the instructions at trial. Scott urged the court to consider it on plain error review, but the court found the argument lacked merit. Scott was accused of ***attempted*** rape, not rape. *Scott*, 231 So. 3d at 1036.

Scott's failure to comply with the contemporaneous objection rule was a procedural default, barring this claim from federal review. Mississippi's contemporaneous objection rule has long been recognized as an independent and adequate state ground consistently and regularly applied to procedurally defaulted claims. *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992). That the state court reviewed this

claim "for plain error review does not vitiate this bar." *Bell v. Epps*, No. CIV.A.

3:04CV212-B, 2008 WL 2690311, at *73 (N.D. Miss. June 20, 2008), *aff'd in part,* 347

F. App'x 73 (5th Cir. 2009) (collecting cases). Scott has not demonstrated cause and

prejudice, or that a fundamental miscarriage of justice would occur if this claim was not

considered. *Coleman*, 501 U.S. at 750. Even if Scott could overcome the procedural

default, the state court's finding that his claim was entirely without merit was not an

unreasonable application or contrary to clearly established federal law.

### Ground Seven

In ground seven, Scott argues the trial court impaired his ability to present a

complete defense by limiting testimony from John Barnes—the victim's neighbor of five

years and an acquaintance of Scott. The defense sought to present testimony from Barnes

about the victim's alleged drug use, specifically, that Barnes and the victim had

previously smoked marijuana, and that Scott and the victim had smoked it three weeks

before what Barnes repeatedly referred to at trial as the "accident."

In his proffer, Barnes stated that he saw the victim and Scott in Scott's truck in

front of her home. As he approached, the victim got out of the car. When he asked what

they were doing, she responded that they were smoking marijuana. The trial court ruled

that Barnes could testify that he had seen the victim and Scott together, but the remaining

proffer, including the victim's alleged drug use, was irrelevant and inadmissible hearsay.

The Mississippi Court of Appeals agreed, noting that whether the victim had smoked

marijuana with Barnes "at some indeterminate point prior to July 3, 2009," was irrelevant

to the events that transpired that night. *Scott*, 231 So.3d at 1032. Moreover, the victim's

statement to Barnes that she and Scott were smoking marijuana did not meet an exception

to the hearsay rule, nor was it "necessary to present to the jury the complete story of the

crime" because it did not "establish or clarify the sequence of events" on the night in

question. *Scott*, 231 So. 3d at 1033 (citation and internal quotation marks omitted); Miss.

R. Evid. 803(1). The court also rejected Scott's argument that the ruling precluded him

from impeaching the victim with her prior inconsistent statement because the proper

foundation had not been laid during the victim's cross examination.

We do not consider the application of state law-evidentiary rules by the

Mississippi Court of Appeals —only whether Scott was denied "a meaningful

opportunity to present a complete defense." *Nevada v. Jackson*, 569 U.S. 505, 509, 133

S. Ct. 1990, 186 L. Ed. 2d 62 (2013) (per curiam) (quoting *Crane v. Kentucky*, 476 U.S.

683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)). "The right of an accused to present a

defense has long been recognized as "a fundamental element of due process."

*Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). "Only

rarely" has the Supreme Court "held that the right to present a complete defense was

violated by the exclusion of defense evidence under a state rule of evidence." *Nevada*,

569 U.S. 505. On the contrary, the Court has "never questioned the power of States to

exclude evidence through the application of evidentiary rules that themselves serve the

interests of fairness and reliability—even if the defendant would prefer to see that

evidence admitted." *Crane*, 476 U.S. at 690 (citing *Chambers v. Mississippi*, 410 U.S.

284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). The "well-established rules of

evidence permit trial judges to exclude evidence if its probative value is outweighed by

certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006).  Evidence erroneously excluded is fundamentally unfair only "if the evidence was material in the sense that it was crucial, critical, and highly significant." *Dacus v. Coleman*, 83 F.3d 419 (5th Cir. 1996) (quoting *Porretto v. Stalder*, 834 F.2d 461, 465 (5th Cir. 1987)).

In the instant case, the state court's enforcement of its evidentiary rules did not render Scott's trial fundamentally unfair or his defense incomplete.  Again, Scott asserted that he went to the victim's home to recover drug money and was presumably invited inside, but at some point, and for some undisclosed reason, they got into a physical altercation.  To this end, defense counsel was allowed to question the victim about her alleged drug use.  Counsel also elicited testimony from Barnes that the victim did not appear afraid when he saw her with Scott in the weeks before the assault.  In closing argument, defense counsel attempted to explain the blood stains and broken glass as follows:  When Scott "reaches for her keys, he hits the glass door.  Sends the glass out onto the back porch.  Bleeding.  Blood is on her purse. In that kitchen area.  He's bleeding.  He's bleeding as they struggled.  The struggling moves down the hall, and the back window gets broken."

While evidence of the victim's alleged drug use might have bolstered Scott's assertion that he went to the victim's home to recover drug money, it does not overcome (1) the photographic and forensic evidence establishing a break-in; (2) the victim's testimony that he attempted to rape her; and, (3) Molley's testimony that he saw the

victim jump out of the moving car.  Nor does it overcome Barnes's testimony on cross-examination that after seeing the victim with Scott, he warned her to stay away from Scott because he was a "bad dude."  The state court's rejection of this claim on direct appeal was not contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court.

### Ground Eight

In ground eight, Scott challenges the weight and sufficiency of the evidence supporting his conviction.  The law is clear, however.  Unlike a sufficiency-of-the-evidence claim, a weight-of-the-evidence claim requires an assessment of the credibility of the evidence presented at trial.  *Tibbs v. Fla.*, 457 U.S. 31, 37–38, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982).  "The credibility of the witnesses and the weight of the evidence is the exclusive province of the jury."  *Hebert v. Rogers*, 890 F.3d 213, 225 (5th Cir. 2018) (citation omitted).  It is purely a matter of state law and is not cognizable on habeas review.  *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . .").  Because Scott's challenge to the weight of the evidence is not a valid claim for habeas corpus review, his request for relief on this basis should be denied.

A sufficiency-of-the-evidence claim, however, is based upon federal due process principles, requiring the State to prove each element of the offense beyond a reasonable doubt.  The only relevant question in assessing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Jackson* requires us to look to state law for the substantive elements of the offense, but "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012) (internal quotation marks omitted). *Jackson* claims also "face a high bar in federal proceedings because they are subject to two layers of judicial deference." *Id.* at 651. In the first layer, a state appeals court reviewing the sufficiency of the evidence sets aside the jury's verdict "only if no rational trier of fact could have agreed with the jury." *Id.* In the second layer, a federal court grants habeas relief only upon a finding that the state court's rejection of a sufficiency of the evidence claim was "objectively unreasonable." *Id.* Under *Jackson's* sufficiency-of-the-evidence standard, juries have broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that they "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Viewing the evidence in the light most favorable to the State in this case, the Mississippi Court of Appeals concluded that the jury heard sufficient evidence from which it could rationally infer that Scott committed the crimes alleged beyond a reasonable doubt. As the court explained:

> The evidence showed that Scott unlawfully entered Landry's home when he broke through the kitchen-door window and entered the home. Officer Holmes and Investigator Jeff Byrd testified that they saw the glass in the kitchen door broken, glass in the kitchen, and glass on the outside of the door. Further, Landry testified that she was sleeping on her living-room

couch when she heard glass breaking and saw Scott enter through the kitchen door. This evidence illustrates that Scott unlawfully entered Landry's home.

The second element of burglary of a dwelling and the attempted-rape charge have overlapping evidence. As part of the burglary charge, the indictment charged the underlying crime of rape. To satisfy the burglary element, the evidence must show that Scott made an act toward its commission. Landry testified that Scott came toward her, grabbed her, and dragged her down the hallway toward her bedroom. Landry further stated that Scott ripped at her clothing, made sexually explicit statements, and grabbed all over her. Photographic evidence also indicated that a blood trail connected the living room to the bedroom. As such, the evidence is sufficient to show beyond a reasonable doubt that Scott completed the crime of burglary of a dwelling with the intent to commit rape.

The evidence showing Scott's intent to rape Landry also satisfies some of the elements for attempted rape. Attempted rape requires a showing that Scott "designed and endeavored to rape [Landry], that he did an overt act toward the commission thereof, and either that he failed therein or was prevented from committing the crime." *Harden v. State*, 465 So. 2d 321, 323 (Miss. 1985). The evidence establishing the second element of burglary also supports the first two elements of attempted rape. Scott's dragging Landry to the bedroom, tearing her clothing, and saying sexually explicit statements demonstrates his intent and constitutes an overt act toward the act of rape. Additionally, Scott only ended his attempt to rape Landry when she told him she would give him money to leave her alone. While Scott contends this does not illustrate that he was prevented from committing the rape, this evidence is sufficient to support his conviction of attempted rape.

Lastly, the State was required to prove all the elements of kidnapping. A person is guilty of kidnapping if he unlawfully forcibly seizes and confines another person. *See Holly v. State*, 671 So. 2d 32, 43 (Miss. 1996). Landry testified that Scott forced her into her vehicle and drove the car while trying to restrain her. When the car slowed down, Landry testified that she jumped from the car, but Scott held on to her for a period of time until she freed herself. Kristopher Molley witnessed Landry get into the car and then jump from the car. This confinement in Landry's vehicle, coupled with Scott's restraint of Landry, satisfied the elements of kidnapping such that a jury could reasonably conclude Scott kidnapped Landry.

> In viewing the evidence in the light most favorable to the State, the evidence was sufficient to prove every element of each of the crimes charged beyond a reasonable doubt. Therefore, this issue is without merit.

*Scott*, 231 So. 3d at 1039–40.

Under our limited AEDPA review, the state court's resolution of this issue was neither contrary to, nor an unreasonable application of, *Jackson.*  On the contrary, the jury's construction of the evidence was reasonable, and its resulting decision to find Scott guilty on each count was rational.

**Ground Nine**

In ground nine, Scott alleges multiple ineffective assistance of counsel claims, the majority of which apply to trial counsel:  (1) failure to impeach the victim with a prior inconsistent statement; (2) failure to prevent the presentation of false evidence; (3) failure to object to the burglary and attempted-rape instructions; (4) failure to present an abandonment instruction; (5) failure to hire an DNA expert; (6) failure to provide relevant evidence so that an informed decision could be made about plea negotiations; and, (7) failure to investigate and provide a basic defense.

To establish a claim for ineffective assistance of counsel, a petitioner must show (1) "counsel's representation 'fell below an objective standard of reasonableness,'" and (2) "but for his counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).  It is not enough to establish a deficiency and resulting prejudice, however.  Under the limited scope of AEDPA review, even if this

Court found the Mississippi Supreme Court's application of *Strickland* was incorrect, we could not recommend granting habeas relief unless we found that court's application of *Strickland* to be objectively unreasonable or an actual misapplication of the law. *Harrington v. Richter*, 562 U.S. 86, 101, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (citation omitted). "[S]urmounting *Strickland's* high bar is never an easy task and [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Vasquez v. Thaler*, 505 F. App'x 319, 326 (5th Cir. 2013) (quoting *Premo v. Moore*, 562 U.S. 115, 122, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011) (internal quotation marks and citations omitted)).

### *Victim's Prior Inconsistent Statement*

Scott's first two ineffective assistance claims concern the victim's statement to Officer Holmes that Scott had gotten on top of her on the bed. Scott claims that counsel was ineffective for allowing the prosecution to present this "false" testimony, and for failing to impeach the victim with this prior inconsistent statement. The record reflects that counsel elicited testimony during the victim's cross examination from which the jury could make this inference, but she stopped short of expressly asking the victim if she made the statement and did not request that Holmes's report be entered into evidence. Arguably, this was because the report would have shown the victim's testimony was consistent in nearly every other aspect. It also included his firsthand observations upon arriving at the scene— that the victim had blood all over her, her clothing was torn, and she had abrasions all over her body.

A tactical decision not to pursue and present potential mitigating evidence because it is "double-edged "in nature is objectively reasonable. *Runnels v. Davis*, 664 F. App'x 371, 377 (5th Cir. 2016) (citing *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999) (find that "double-edged" evidence is "even less susceptible to judicial second-guessing" because it "essentially comes down to a matter of degrees").  Even if counsel was deficient in failing to impeach the victim as Scott argues, he has not shown that he was prejudiced.  Counsel elicited testimony from the detective that the victim made this statement during the defense's case in chief; she also cited it as a reason to question the victim's credibility throughout trial.  But as noted on direct appeal, "other evidence satisfied the elements of the crime." *Scott*, 231 So.3d at 1045.

### *Jury Instructions*

Scott's next two ineffective assistance claims concern counsel's handling of jury instructions.  Specifically, Scott argues that counsel was ineffective for failing to object to the fact that the burglary and attempted rape instructions did not include the definition of rape.  However, the "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007).  *See also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").  As noted earlier, the state court found the instructions were proper on direct appeal.

Scott's claim that counsel was ineffective for failing to present an abandonment instruction is equally unavailing.  Under Mississippi law, abandonment is a defense to an attempted crime.  "[A]bandonment occurs where, through the verbal urging of the victim,

but with no physical resistance or external intervention, the perpetrator changes his mind." *Ross v. State*, 601 So. 2d 872, 875 (Miss. 1992). In *Ross,* the Mississippi Supreme Court found sufficient evidence to support an abandonment defense where the defendant ceased in his efforts to rape a woman after she pleaded and told him that her daughter would soon be home. *Id.* at 873. *See also Pruitt*, 528 So.2d at 830 (attempted rape was voluntarily abandoned by defendant when he told victim she was free to leave). But contrary to what Scott argues in his traverse, the Mississippi Court of Appeals did not find that he abandoned an attempt to rape the victim. Moreover, the undersigned submits that Scott cannot abandon an intent that he claimed not to have. Scott has consistently maintained that he did not go to the victim's home with the intention of raping her nor make any efforts to do so once he was there. Had trial counsel sought an abandonment instruction, it would have undermined Scott's defense.

### *DNA Evidence*

For his next two claims, Scott objects to counsel's handling of the DNA evidence. Specifically, Scott alleges that counsel's failure to obtain the DNA report prior to trial prejudiced his ability to make an informed plea decision and to effectively challenge the DNA results at trial. According to Scott, he was presented with a ten-year plea deal, and the State only sought DNA testing once plea negotiations fell apart. Had he known about the results sooner, Scott claims that he "***may*** well have accepted the State's plea bargain." (emphasis added).

It is well-established that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is

denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Lafler v. Cooper*, 566 U.S. 156, 168, 132 S. Ct. 1376, 1387, 182 L. Ed. 2d 398 (2012). Having closely examined the record, the undersigned finds no indication that a plea offer was made. [15] That said, Scott cannot show that counsel's performance was deficient for the reason asserted. The DNA analysis was not completed until the day before trial, and upon receiving the results, counsel moved for a continuance. To the extent Scott claims that counsel was ineffective for failing to obtain the DNA report sooner, counsel cannot be deemed ineffective for failing to discover something that did not exist. Moreover, the DNA evidence was cumulative, and Scott has not shown "that better preparation, or testimony by a defense DNA expert, would have changed the jury's verdict." *Wolfe v. Dretke*, 116 F. App'x 487, 494–95 (5th Cir. 2004).

### *Failure to Investigate*

Lastly, Scott argues that counsel was ineffective for failing to investigate and provide a basic defense. Scott's trial counsel was the fourth attorney to represent him after his arraignment. The first two attorneys were retained by Scott, while the second two were court-appointed. Liberally construed, Scott contends that his attorneys were collectively ineffective for failing to conduct a pre-trial investigation for potential witnesses and for failing to preserve lost evidence.

---

[15] The only apparent references to plea negotiations were remarks made by the trial court judge, who noted that the delay in trial was largely caused by Scott's second attorney, Rod Nixon, who repeatedly indicated that the plea would be entered. ECF No. 8-3, p. 3.

In support, Scott claims that Molley's testimony could have been discredited if counsel had sought his statement before trial. Scott argues that Molley could not have known, for instance, that he was a tall man because he only saw him as the victim's car passed. Moreover, Scott claims that Molley "mentioned four additional witnesses [that] counsel could have sought and interviewed to establish that there was a relationship between Scott and Landry." Scott even asserts that **_he_** knew of several other witnesses who could have testified about his relationship with the victim. Lastly, Scott charges that counsel should have investigated the victim's personal background and searched her home and car for drugs.

First, whether Molley could accurately ascertain Scott's height is irrelevant as Scott's identity has never been in dispute. Also, Molley testified that he saw the victim and Scott as they were walking out of her home.

Second, the only individuals that Molley mentioned in his testimony were his co-worker and her two roommates. If it is Scott's contention that **_these_** individuals could have testified that Scott and the victim had a relationship, Scott was in the best position to inform counsel of same. Likewise, Scott was in the best position to inform counsel of any other witnesses that he knew who could have testified about his alleged relationship with the victim. None of his attorneys can be reasonably faulted for failing to present mitigating evidence that their client failed to disclose. *Sharp v. Johnson*, 107 F.3d 282, 286 (5th Cir. 1997) (holding that any error which occurred due to the defendant's withholding of information from his attorney was not the fault of counsel and did not constitute deficient performance). Moreover, a petitioner seeking to show ineffective

assistance of counsel by failing to investigate a witness must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Scott presents nothing more than his own bare allegations that witnesses would have presented exonerating evidence; he presents no witness affidavits or any other evidence to support his claims. Additionally, "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day*, 566 F.3d at 538 (citing *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008)).

As for his failure-to-investigate claim, Scott must allege "with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). For "without a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland's* standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting *U.S. ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)) (internal quotation marks omitted).

41

Again, Scott makes no affirmative showing here.  Nothing of record indicates that drugs were found in the victim's home or car.  Even if Scott's attorneys were deficient in failing to investigate evidence that could have bolstered Scott's assertion that this was a drug deal gone bad, Scott would still have to overcome the evidence that was presented at trial establishing that he committed the crimes as alleged upon his arrival.

In sum, none of Scott's eight ineffective assistance of counsel claims establish that the Mississippi's Supreme Court's rejection of them was contrary to or an unreasonable application of *Strickland*.  Accordingly, it is recommended that federal habeas relief be denied on this claim.

## Ground Ten

As his final claim, Scott asserts cumulative error.  In this circuit, a cumulative error claim entitles a petitioner to habeas relief only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violation of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (quoting *Cupp*, 414 U.S. at 147).  Meritless claims cannot be cumulated regardless of the total number raised.  *Id.*  The undersigned submits that Scott's claims do not individually or in combination amount to a constitutional violation.  The cumulative error claim, as well as the other claims alleged, fail to establish grounds for habeas relief.

For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on July 21, 2021.

s/ LaKeysha Greer Isaac<br>
UNITED STATES MAGISTRATE JUDGE
