**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**JAMES WESLEY SCOTT**                                                    **PETITIONER**

**V.**                                          **CIVIL ACTION NO. 2:18-CV-156-TBM-LGI**

**JACQULINE BANKS**                                                       **RESPONDENT**

**ORDER ADOPTING REPORT AND RECOMMENDATION AND
DISMISSING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is the Report and Recommendation [13] entered by United States Magistrate Judge LaKeysha Greer Isaac on July 21, 2021. After a thorough examination of the facts, law, and procedural history, Judge Isaac recommends that James Wesley Scott's Petition for Writ of Habeas Corpus [1] be dismissed with prejudice because none of Scott's habeas claims entitle him to relief under 28 U.S.C. § 2254. The Court agrees with Judge Isaac.

In seeking habeas relief, Scott presented the Court with ten grounds: (1) violation of right to initial appearance; (2) violation of statutory right to speedy trial; (3) violation of constitutional right to speedy trial; (4) erroneous denial of request for continuance and allowance of untimely DNA evidence; (5) erroneous grant of jury instruction; (6) failure to instruct jury on essential elements; (7) violation of right to a complete defense; (8) insufficiency of the evidence or, alternatively, verdict against overwhelming weight of evidence; (9) ineffective assistance of counsel; and (10) cumulative error. Judge Isaac found that the adjudication of these ten grounds, when raised as claims in state court, did not result in decisions that were "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented." [13], pg. 5 (citing 28 U.S.C. § 2254(d)).

A copy of the Report and Recommendation was mailed to Scott on July 21, 2021. Pursuant to 28 U.S.C. § 636(b)(1), objections to a Report and Recommendation must be filed within fourteen days. Accordingly, Scott had until August 4, 2021, to file his objections. Although his Objections [14] were not filed with the Court until August 10, 2021, the certificate of service (and envelope) are dated August 5, 2021. Under the prison mailbox rule, "a pro se prisoner's written objections to a magistrate's report and recommendations must be deemed filed and served at the moment they are forwarded to prison officials for delivery to the district court." *Thompson v. Raspberry*, 993 F.2d 513, 515 (5th Cir. 1993). Scott's objections are therefore deemed filed on August 5, making them untimely by one day.

The Federal Magistrates Act, 28 U.S.C. § 636, "does not *require* the judge to review an issue *de novo* when no objections are filed, [but] 'it [also] does not *preclude* further review by the district judge, *sua sponte*, or at the request of a party, under a *de novo* or any other standard.'" *Younce v. Barnhart*, 98 F.3d App'x 305, 306 (5th Cir. 2004) (emphasis added) (quoting *Thomas v. Arn,* 474 U.S. 140, 154, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)) (finding that a district court did not err by reviewing a party's objections to a magistrate judge's report and recommendation, which were untimely by two days); *Delgado v. Bowen,* 782 F.2d 79 (7th Cir. 1986); WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 3070.1. Despite Scott's tardiness of one day, this Court will consider *de novo* his objections to the Magistrate Judge's Report and Recommendation.

## I. INTRODUCTION

The following facts were set forth by the Mississippi Court of Appeals and the record. On the early morning of July 3, 2009, James Scott broke through the glass door of a woman's home

and grabbed her by the throat. ECF NO. 8-4, pg. 6-8. He dragged her from the living room—where she had been sleeping—toward her bedroom while making sexual comments such as "that ass is mine." *Id.* at 10. Believing that Scott was going to rape her, the victim pleaded with him to take her money instead. *Scott v. State*, 231 So. 3d 1024, 1030 (Miss. Ct. App. 2016). Scott released her, and she tried to jump out of the bedroom window. *Id.* Scott pulled the victim back inside and took her back to the kitchen, where he looked through her purse. *Id.* After he found only five dollars inside, the victim begged Scott to take her to an ATM so she could give him more money. *Id.* Scott led her to her car and pushed her into the passenger seat. *Id.* As they drove toward the ATM, the victim attempted to dive out of the moving car. ECF NO. 8-4, pg. 18. Scott held onto her neck to prevent her escape, but she was able to free herself and roll onto the pavement. *Id.* Scott drove away. *Id.*

At the time Scott is accused of committing these crimes, he was on Earned Supervised Release for a previous conviction. On July 15, 2009, the Mississippi Department of Corrections issued a rule violation report which stated that Scott was wanted by the Hattiesburg police for his new charges. Scott turned himself in on November 9, 2009. His supervised release was revoked, and Scott served the rest of his sentence for the previous crime. He was released on February 6, 2011. On September 26, 2011, a grand jury indicted Scott for the actions alleged above. On August 20, 2014, after a two-day trial, Scott was convicted of burglary, attempted rape, and kidnapping. As a habitual offender, Scott received three consecutive life sentences without the possibility of parole.

Scott appealed the conviction to the Mississippi Court of Appeals, bringing the following claims: (1) the trial court violated his right to fully present a defense by prohibiting the testimony of defense witness James Barnes; (2) the trial court failed to instruct the jury on the essential

elements of each crime under Counts I and III; (3) the trial court erred in giving jury instruction S-11A; (4) the trial court erred by denying Scott's request for a continuance and allowing untimely disclosed DNA evidence; (5) the evidence was insufficient to support the verdict; alternatively, the verdict was against the overwhelming weight of the evidence; (6) the trial court erred in denying Scott's motions to dismiss for violation of his right to a speedy trial; (7) the State knowingly proffered perjured testimony; (8) the State suppressed evidence; and (9) Scott was denied the right to confront the witnesses against him. The Court of Appeals affirmed the trial court in a written opinion. *Scott*, 231 So. 3d. The Mississippi Supreme Court affirmed without opinion in a four-four split decision, though the four dissenting justices wrote an opinion contesting the denial of Scott's constitutional speedy trial claim. *Scott v. State*, 231 So. 3d 995 (Miss. 2017). Scott filed a Petition for Writ of Certiorari with the United States Supreme Court, which was denied.

Scott then filed a pro se motion for Post-Conviction Collateral Relief with the Mississippi Supreme Court. He raised the following issues: (1) whether Petitioner's statutory right to a speedy trial was violated; (2) whether Petitioner's constitutional right to a speedy trial was violated; (3) whether the trial court erred in denying Petitioner's request for a continuance and allowing the state to present untimely-disclosed DNA evidence; (4) whether the trial court erred in granting Instruction S-11A; (5) whether the trial court failed to instruct the jury on the essential elements of the crime under Counts I and III; (6) whether the trial court violated Petitioner's right to fully present a defense; (7) whether the evidence was insufficient to support the verdict, alternatively, the verdict was against the overwhelming weight of the evidence; (8) whether Petitioner was denied the effective assistance of counsel; and (9) cumulative error. He also filed motion for

4

amendment to raise an additional issue: (10) whether Petitioner was denied his constitutional right to an initial appearance. The Mississippi Supreme Court denied the petition stating that most of the claims were barred by *res judicata* as they had already been addressed on appeal and the rest of the claims lacked merit. Then, Scott filed the instant Petition with this Court.

## II. STANDARD OF REVIEW

It is well-settled that "parties filing objections must specifically identify those findings objected to." *Johansson v. King*, No. 5:14-cv-96-DCB, 2015 WL 5089782, at *2 (S.D. Miss. Aug. 27, 2015). The Court must review any objected-to portions of a report and recommendation *de novo*. Such a review means that the Court will consider the record that has been developed before the Magistrate Judge and make its own determination on the basis of that record. *United States v. Raddatz*, 447 U.S. 667, 675, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980). The Court need not consider frivolous, conclusive, or general objections. *Johansson*, 2015 WL 5089782, at *2 (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)). Additionally, "[m]erely reurging the allegations in the petition or attacking the underlying conviction is insufficient to receive *de novo* review." *Id.* When a *de novo* review is not warranted, the Court need only review the findings and recommendation and determine whether they are either clearly erroneous or contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). Here, Scott has filed lengthy objections to the Report and Recommendation. The Court will review Scott's non-frivolous objections *de novo*. The Court will review the rest of Magistrate Judge Isaac's findings to determine whether they are in clear error or contrary to law.

A writ of habeas corpus by a state prisoner who has exhausted his state-law remedies will only be granted if the state court's adjudication of the merits of the claim "resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court's decision is contrary to clearly established federal law if it 'applies a rule that contradicts the governing law set forth' in Supreme Court cases or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent.'" *Fields v. Thaler*, 588 F.3d 270, 273 (5th Cir. 2009) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). "A state court's decision constitutes an 'unreasonable application' of clearly established Federal law, as determined by the Supreme Court, if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Horn v. Quarterman*, 508 F.3d 306, 312 (5th Cir. 2007) (alteration in original) (internal quotations omitted). "[T]he state court's factual findings are 'presumed to be correct' unless the applicant rebuts this presumption with 'clear and convincing evidence.'" *Vollmer v. Davis*, 673 F. App'x 406, 410 (5th Cir. 2016) (quoting 28 U.S.C. § 2254(e)(1)).

Courts may not use federal habeas review to "second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37, 38, 132 S. Ct. 2148, 183 L. Ed. 2d 32 (2012) (quoting *Renico v. Lett*, 559 U.S. 766, 779, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)). Thus, even if the habeas court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," it may not issue the writ unless it also finds that the state court's actions were unreasonable. *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012)

(quoting *Williams*, 529 U.S. 36 at 411). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

## III. DISCUSSION

### A. Ground One: Initial Appearance

Scott first claims that he was denied his constitutional right to an initial appearance. As noted, Scott was on Earned Supervised Release for a previous conviction at the time he allegedly committed the instant crimes. He turned himself in on November 9, 2009, after the Mississippi Department of Corrections issued a rule violation report—though he claims he turned himself in based on a warrant. *See infra* pp. 11-12. On February 22, 2010, Scott's Earned Supervised Release was revoked. He was discharged from prison again on February 6, 2011. Scott was not indicted for the instant crimes until September 9, 2011—more than two years after the crimes were committed. Scott was arrested under a capias warrant pursuant to the indictment on January 25, 2012. The record reflects that he did not have an initial appearance in 2009 after he first turned himself in, nor did Scott have one after he was arrested in 2012 pursuant to the indictment.

Scott first made this argument—concerning the lack of an initial appearance—in a motion to amend his petition for state post-conviction relief in the Mississippi Supreme Court. The state court denied the petition without ruling on the motion. However, Magistrate Judge Isaac assumed *arguendo* that the claim had been properly exhausted and conducted a thorough examination of Scott's initial appearance argument. Magistrate Judge Isaac found that he was not constitutionally entitled to an initial appearance after his January 2012 arrest because he was arrested under a valid warrant and indictment. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 53, 111 S. Ct. 1661, 114

L. Ed. 2d 49 (1991). Magistrate Judge Isaac also found that habeas relief was not warranted for the lack of an initial appearance after his November 2009 arrest because he was later convicted. *See Montoya v. Scott*, 65 F.3d 405, 421 (5th Cir. 1995).

Scott strenuously objects to the Report and Recommendation's findings on this ground. His arguments mainly focus on the procedural importance of the initial appearance to defendants. The Court must review his objections to this ground *de novo*. But the Court need not spend much time here. The Supreme Court has held that "a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). *See also Montoya*, 65 F.3d at 421 (explaining that even if a petitioner had been illegally denied an initial appearance, he was not entitled to habeas relief). In the end, then, Scott's lengthy arguments that he should have received an initial appearance are but sound and fury. Even if he were correct, habeas relief could not issue on this ground. Ground One is denied.

**B. Ground Two: Statutory Speedy Trial**

Scott next argues that his right to speedy trial under MISS. CODE § 99-17-1 was violated. Yet, as Magistrate Judge Isaac observed, the statutory speedy trial argument is easily disposed of, given that "federal consideration of a claim that a state has violated its own speedy trial rules is limited to a determination of whether the state's action has violated Petitioner's *constitutional* right to a speedy trial or to due process." *Millard v. Lynaugh*, 810 F.2d 1403, 1406 (5th Cir. 1987) (emphasis added). Thus, on habeas review, a federal court should only determine whether the delay in Scott's trial offended his rights under the Constitution, not his rights under Mississippi

statute. Scott did not object to Magistrate Judge Isaac's finding in this regard, and the finding is without clear error and is not contrary to law. Ground Two is denied.

## C. Ground Three: Constitutional Speedy Trial

Scott's trial began August 19, 2014—more than five years after he committed the crimes, almost five years after he initially turned himself in, and almost three years after he was indicted. Magistrate Judge Isaac found that the Mississippi Court of Appeals' decision denying Scott's constitutional speedy trial claim was "not contrary to or an unreasonable application of clearly established federal law." [13], pg. 13. This Court agrees.

The right to a speedy trial "attach[es] only when [a defendant] is 'formally charged with a crime or actually restrained in connection with that crime.'" *Cowart v. Hargett*, 16 F.3d 642, 645 (5th Cir. 1994) (quoting *Dickerson v. Guste*, 932 F.2d 1142, 1144 (5th Cir. 1991), *cert. denied*, 502 U.S. 875, 112 S. Ct. 214, 116 L. Ed. 2d 172 (1991)). To determine whether the right has been violated, courts balance (1) the length of delay, (2) the reason for the delay, (3) the assertion of the right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). Federal habeas' deferential standard "requires us to give the widest of latitude to a state court's conduct of [the *Barker* analysis]." *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011).

## i. Length of Delay

Magistrate Judge Isaac found that the first factor weighed in Scott's favor but not so heavily as to relieve him of the burden to prove prejudice under the fourth factor. Scott did not object to this finding. The Court will review Magistrate Judge Isaac's analysis of this *Barker* factor for clear error or for being contrary to law.

9

Assessing the length of delay factor requires a two-step inquiry. "First, the delay must be extensive enough to give rise to a presumption of prejudice that triggers examination of the remaining *Barker* factors." *Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008). A one-year delay requires a court to consider the rest of the *Barker* test. *Id.* Next, "the court must examine the extent to which the delay extends beyond the bare minimum required to trigger a *Barker* analysis, because 'the presumption that pretrial delay has prejudiced the accused intensifies over time.'" *Id.* at 258 (quoting *Doggett v. U.S.*, 505 U.S. 647, 652, 112 S. Ct. 2686, 120 L. Ed. 2d. 520 (1992)). Prejudice is only firmly presumed—meaning the defendant is no longer required make an affirmative showing of it—if the delay is at least five years. *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003).

As Magistrate Judge Isaac noted, the Mississippi Court of Appeals calculated the beginning point for the delay from the September 26, 2011, indictment. [13], pg. 13; *Scott*, 231 So. 3d at 1043. This calculation results in a two-year, ten-month, and twenty-four-day delay before Scott's trial. If the time is instead measured from when Scott first turned himself in and was arrested, the resulting delay before trial is four years, nine months, and ten days. Either delay is above the one year required to trigger analysis of the other *Barker* factors. But even the lengthier delay between Scott's initial arrest and the trial is short of the five-year requirement where courts presume *Barker*'s prejudice factor has been met. *Serna-Villarreal*, 352 F.3d at 232. Regardless, Magistrate Judge Isaac deferred to the state court's determination of the beginning point of the length of delay. This was not a clearly erroneous decision or contrary to law.

In fact, the Fifth Circuit has recognized the following:

Section 2254(d)(1) imposes a "'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the

> doubt.'" It is not enough for a petitioner to show that a state court's decision was incorrect or erroneous; he must show that the decision was objectively unreasonable, which is "a substantially higher threshold."

*Amos*, 646 F.3d at 204 (footnote omitted) (first quoting *Cullen v. Pinholster*, 563 U.S. 181, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011); then quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007)).

As mentioned, the Sixth Amendment right to speedy trial attaches at either the indictment or when the defendant is *restrained in connection with the crime*. *Cowart*, 16 F.3d at 645. Scott claims that he was held in 2009 due to a warrant related to these charges. Thus, he argues, the time from his first arrest in November 2009 to his trial in August 2014 should be considered in this factor. Yet no warrant appears on the record—though at trial the investigating detective did testify that he procured a warrant. ECF NO. 8-5, pp. 23-25. The Mississippi Court of Appeals disagreed with Scott. *Scott*, 231 So. 3d at 1043 ("The record, however, does not fully support Scott's contention that he was first arrested in late 2009 for this crime."). Instead, the Court of Appeals presumed that Scott's 2009 detention resulted from the rules violation report issued on July 13, 2009, and subsequent Earned Supervised Release revocation on February 22, 2010. Committing any new crimes violated the terms of release, and, additionally, the record shows that he had absconded— a separate violation. A federal habeas court must defer to the factual determinations made by the state court unless the petitioner rebuts this presumption with clear and convincing evidence. *Vollmer*, 673 F. App'x at 410. Except for the detective's trial testimony that a warrant was obtained, Scott has not presented this Court with any evidence sufficient to disturb the Court of Appeal's factual finding that Scott's incarceration was due to the rules violation report and revocation of supervised release—not because of the charges he was convicted of in 2014.

Since the state court determined that Scott was held due to his Earned Supervised Release revocation stemming from a separate conviction, its decision to calculate the time of delay from Scott's indictment and not earlier was not "objectively unreasonable." In *Cowart*, the Fifth Circuit examined a similar case where a defendant was held in custody for parole violations after committing new crimes and indicted for those crimes some time later. 16 F.3d at 645-46. That Court found that the defendant's speedy trial rights attached not at the point of the arrest for the parole violation, but rather when he was formally indicted. *Id.* The Mississippi Court of Appeals' decision is not an unreasonable application of clearly established federal law. Thus, Magistrate Judge Isaac correctly found that the first *Barker* factor weighs in Scott's favor, but does not relieve him from making a showing of prejudice under the fourth factor.

**ii. Reasons for Delay**

The Mississippi Court of Appeals weighed the second *Barker* factor against Scott, attributing most of the delay to him. Magistrate Judge Isaac did not necessarily agree in the Report and Recommendation, stating instead that "[e]ven if the Court were to agree that this reason was sufficient to weigh this *Barker* factor in Scott's favor, it is not dispositive. It must be considered in conjunction with the other factors." [13], pg. 17. Scott did not object to this finding, so it will be reviewed for clear error or for being contrary to law.

"The second *Barker* factor—which party is more responsible for the delay—primarily concerns the justification for the delay." *Laws v. Stephens*, 536 F. App'x 409, 413 (5th Cir. 2013). Deliberate delay to disadvantage the defense weighs heavily against the state. *Barker*, 407 U.S. at 531. Neutral delays are also counted against the state, but less heavily. *Id.* Delays for valid reasons

12

or delays caused by the defendant weigh against the defendant. *Goodrum*, 547 F.3d at 258 (citing *Cowart*, 16 F.3d at 647).

The Mississippi Court of Appeals attributed the 171-day delay, between Scott's indictment and his arraignment, to the state since no reason for the delay was provided. It attributed the thirty days, between the arraignment and Scott's motion to recuse the trial judge, to Scott because he failed to obtain counsel during that time. It additionally attributed a 554-day delay to Scott, because during this long period his then-attorney continuously maintained that a plea bargain would be worked out and did not seek a trial date. *See Vermont v. Brillon*, 556 U.S. 81, 90-91, 129 S. Ct. 1283, 173 L. Ed. 2d 231 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)) ("Because 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant."). All other delays were weighed against neither party, or both equally. *Scott*, 231 So. 3d at 1041-43. These other delays were the result of the time the Mississippi Supreme Court took to appoint a new trial judge and simultaneous motions—Scott's then-attorney moved to withdraw as counsel and the state moved for a continuance to obtain DNA samples—filed by the parties. In total, 171 days of delay were attributed to the state, 584 days of delay were attributed to Scott, and 224 days were counted against neither party. Since the Court of Appeals found Scott responsible for the lion's share of the delay, it found that this factor weighed against him.

Scott argues that the pre-indictment period should have been considered and weighed against the state. The state did not indict Scott for more than two years after he allegedly committed these crimes. This delay may have resulted from negligence by the Hattiesburg Police Department. *See* ECF NO. 8-3, pg. 81. Yet the Mississippi Court of Appeals did not include this

period in its analysis of this factor. As previously discussed, Scott's speedy trial rights did not attach until he was indicted. *Supra* pp. 11-12; *see also Cowart*, 16 F.3d at 645-46. However, Magistrate Judge Isaac found that even if this time were added, this factor would not heavily weigh in Scott's favor. *See United States v. Avalos*, 541 F.2d 1100, 1111 (5th Cir. 1976) ("Unexplained or negligent delay is weighed against the state, but not heavily."). This finding was not clearly erroneous or contrary to law.

### iii. Assertion of the Right

Magistrate Judge Isaac found that the Mississippi Court of Appeals correctly weighed the next *Barker* factor against Scott. Scott objects to this finding. Liberally construed, he argues that Magistrate Judge Isaac failed to properly consider two pro se speedy trial motions that he made. The Court will review Magistrate Judge Isaac's recommendation on this factor *de novo*.

If the defendant fails to timely assert the right to speedy trial, it will weigh against him. *Speer v. Lumpkin*, 824 F. App'x 240, 245 (5th Cir. 2020) (finding defendant's raising of speedy trial complaints twenty-two months after indictment weighed against him). *See also Divers v. Cain*, 698 F.3d 211, 219 (5th Cir. 2012) (waiting seventeen months before assertion of right counted against defendant); *Robinson v. Whitley*, 2 F.3d 562, 569 (5th Cir. 1993) (almost twelve-month delay before right asserted weighed against defendant). Additionally, "a motion to dismiss, as opposed to a request for a prompt trial, is 'not a valid demand for a speedy trial.'" *Speer*, 824 F. App'x at 245 (quoting *Cowart*, 16 F.3d at 647).

The Mississippi Court of Appeals considered three *motions to dismiss* for violating Scott's speedy trial rights. The first of such motions appearing on the record was filed on March 24, 2014. This was more than twenty-nine months after his indictment, far past the time period that courts

have found weighed against defendants. Also, these motions sought dismissal and not trial and were improper vessels with which to demand the right, and therefore did not show a "desire to be tried promptly." *Id.* (citing *United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009)). Thus, the state court weighed this factor against Scott.

Scott argues that the Mississippi Court of Appeals erred because he claims that he made two other previous speedy trial motions, one sometime in June 2010 and one on May 31, 2013. The Court of Appeals did not consider these motions because they do not appear in the record. *Scott*, 231 So. 3d at 1043. Magistrate Judge Isaac, in turn, agreed with the state court because she found that these earlier *alleged* motions, like his correctly filed motions, were not proper speedy trial demands. Scott fervently argues that these two motions convey a demand for speedy trial that should have tilted this factor in his favor.

Scott's alleged May 31, 2013, demand consists of a handwritten letter, submitted as an attachment to his habeas petition, which states in part:

> Ms. Adams I would like you to please file this letter and also accept it as a <u>motion</u> for fast and speedy trial in Cause No. 11-556 C.R. This is the second time I have wrote this Court asserting my right. My attorney will be notified of this letter and also of the letter I wrote to this Court in May/June 2010.

[2] Ex. A(1). However, even assuming that this letter was properly filed, the letter offers no aid to Scott. This letter is dated over eighteen months after his indictment—still at a point at which courts weigh this factor against the defendant.

Scott also claims he made a demand sometime in June 2010, but he did not submit a similar letter or other filing. Scott apparently argues, however, that the state prosecutor admitted to this demand's existence in the speedy trial hearing held before his trial commenced. There, the prosecutor did inform the trial judge that "there may have been a motion [for speedy trial] filed

prior to Your Honor being appointed." ECF NO. 8-3, pg. 74. But whether this motion existed is likewise inconsequential to Scott's speedy trial claim. Scott was not indicted until September, 26, 2011. A demand made in June 2010, then, would have been made before his right to speedy trial attached, as has been discussed previously. *See supra* pp. 11-12. The Mississippi Court of Appeals did not unreasonably ignore these two alleged demands, nor did it unreasonably count this factor against Scott.

### iv. Prejudice to the Defendant

Prejudice may take the form of (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) impairment of the defense. *Barker*, 407 U.S. at 532. "The 'most serious' form of prejudice occurs when the delay undermines a defendant's ability adequately to prepare his case." *Goodrum*, 547 F.3d at 262. Scott primarily argued to the Mississippi Court of Appeals and on habeas that the delay resulted in lost evidence which impaired his defense. The Mississippi Court of Appeals found that any such lost evidence did not create prejudice. Magistrate Judge Isaac agreed, finding that "fair-minded jurists could conclude that Scott's defense was not prejudiced by the loss of evidence to the extent necessary to constitute a speedy trial violation on any of these charges." [13], pg. 25. Scott objects, claiming that both the Mississippi Court of Appeals and Magistrate Judge Isaac improperly placed the burden of proving prejudice stemming from the lost evidence on him rather than on the state to prove to the contrary. He also argues that Magistrate Judge Isaac failed to "consider the prejudice to the defendant [of being] without [the] benefit of counsel for over (2) years." [14], pg. 6. The Court will review these objections *de novo*.

Scott alleges that the pretrial delay resulted in the loss of police files, a photographic lineup, the 911 call, the victim's written statement, potential witnesses, and the victim's torn clothes. He

16

urges that the state should have the burden of demonstrating that the loss of this evidence did not prejudice Scott. To support his contention, Scott cites *Freeman v. State*, 121 So. 3d 888 (Miss. 2013). In *Freeman*, the Mississippi Supreme Court reversed a conviction when the state lost key evidence it was under court order to preserve. *Id.* That is not the case here. He also cites *DeLaughter v. Lawrence Cnty. Hosp.*, 601 So. 2d 818 (Miss. 1992) and *Bott v. Wood*, 56 Miss. 136 (1878), two Mississippi cases which stand for the proposition that "destruction or suppression [of an evidentiary document] raises a presumption that the document would, if produced, militate against the party destroying or suppressing it." *Bott*, 56 Miss. at 140.

This is not the rule in a Sixth Amendment speedy trial analysis. Speculation that lost evidence would have aided Scott is not sufficient to justify habeas relief. *Robinson v. Whitley*, 2 F.3d 562, 571 (5th Cir. 1993) (holding that lost rape kit did not create prejudice to defendant because he could offer no evidence of what the rape kit would have shown). Instead, the presumption of prejudice is only created when "the length of delay, the reason for the delay, and the defendant's diligence in asserting his right . . . collectively weigh heavily in favor of the defendant." *United States v. Saenz*, 286 F. App'x 166, 169 (5th Cir. 2008). Otherwise, a petitioner "must demonstrate that he suffered from actual prejudice." *Amos*, 646 F.3d at 208. Thus, Scott must show more than a mere possibility of prejudice, "especially when [he] has the AEDPA burden of showing that the state court could not have reasonably ruled against him." *Speer*, 824 F. App'x at 246 (citing *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S. Ct. 648, 88 L. Ed. 2d 640 (1986)).

For most of this evidence, Scott can only speculate benefit. Taking each piece in turn, Scott does not explain how any missing police files would have aided his defense. Scott also cannot explain how a photographic lineup would have helped, especially since his defense was never

mistaken identity. In fact, Scott presented a witness at trial for the sole purpose of establishing that the victim *did* know Scott. He likewise does not show how he would have benefited from a recording of the 911 call (in fact, given the other evidence presented at trial, the 911 call would likely have been detrimental). As to the victim's written statement, Scott does allege that its contents could have been used to impeach the victim. However, without knowing the specific contents of the statement, Scott fails to show more than a possibility of prejudice. Additionally, Scott did have access to the July 3, 2009, police report that included the alleged inconsistent statements from the victim, and his attorney strategically chose not to use the police report. Scott vaguely alleged that the pretrial delay resulted in the loss of witnesses for his defense, but he does not identify these witnesses or what they would testify to, nor does he describe how the pretrial delay resulted in their loss.

Neither did the loss of the victim's clothes create prejudice. The prosecution presented Scott tearing at her shirt as one of the reasons for the jury to find intent to rape. However, the victim testified that her torn shirt never made its way to the police because her mother threw the shirt away at the hospital. ECF NO. 8-4, pg. 43. Thus, the loss of this evidence cannot be attributed to pretrial delay. *See United States v. Crouch*, 84 F.3d 1497, 1518 (5th Cir. 1996) (noting that evidence lost due to reasons other than delay does not amount to *Barker* prejudice). And a police officer testified that the victim's clothes were torn. ECF NO. 8-4, pg. 66. Scott has failed to meet his burden to show prejudice arising from loss of the clothes or any other evidence.

Scott also cites to *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984) to support his claim that the lost evidence in this case necessitates habeas relief. *Trombetta* was not a speedy trial case, but rather held that due process requires the state to preserve

potentially exculpatory evidence that "both possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. In *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), the Court further explained that if the lost evidence is only "potentially exculpatory," the defendant must also prove bad faith, rather than simple negligence, on the part of the state. *Id.* at 58. As has been shown, the evidence Scott alleges to have been lost did not possess readily apparent exculpatory value. Further, he does not demonstrate that the state purposefully destroyed any such evidence in bad faith. Scott's objection has no merit.

Scott additionally asserts that the Report and Recommendation failed to consider the prejudice that he experienced from being without counsel. The record reveals that his first attorney made an appearance on April 11, 2012, six and a half months after he was indicted and less than three months after he was arrested. Scott points to *United States v. Seltzer*, 595 F.3d 1170, 1180 (10th Cir. 2010), a Tenth Circuit case which found *Barker* prejudice when a defendant went over six months from his indictment without an attorney. However, the Tenth Circuit later clarified *Seltzer*, explaining prejudice arose because the state held an ex parte proceeding during the period the defendant was without counsel. *United States v. Nixon*, 919 F.3d 1265, 1276 (10th Cir.), *cert. denied*, 140 S. Ct. 242, 205 L. Ed. 2d 138 (2019). Thus, even if delay interferes with a defendant's representation for a period of time, the defendant still must "establish how additional time with counsel would have changed [his] defense" to show prejudice. *United States v. Frias*, 893 F.3d 1268, 1274 (10th Cir. 2018). Scott does not do so, and instead offers only conclusory allegations and conjecture. This factor properly weighs against him.

Magistrate Judge Isaac also found that the Mississippi Court of Appeals reasonably determined that Scott could not demonstrate the first two kinds of prejudice, oppressive incarceration and anxiety. Scott did not object to this finding. The finding is not in clear error nor contrary to law. From November 2009 to February 2011, he was held for violating his Earned Supervised Release terms—this did not create prejudice. *See Cowart*, 16 F.3d at 647 ("Incarceration on other charges or convictions pending trial also does not constitute prejudice for *Barker* purposes."). Scott was held in connection to this case after his arrest in January 2012 following the indictment. But "[a] lengthy pretrial incarceration does not inherently offend a defendant's liberty interests." *United States v. Frye*, 489 F.3d 201, 213 (5th Cir. 2007). Because Scott was sentenced to three consecutive life sentences, his pre-trial delay did not increase the total time of his incarceration. *See id.* (finding no prejudice due to pre-trial incarceration when defendant sentenced to life imprisonment). Additionally, Scott has not presented a specific showing of increased anxiety or concern. "[G]eneralized expressions of anxiety and concern amount to little more than a nominal showing of prejudice." *Speer*, 824 F. App'x at 246 (quoting *Goodrum*, 547 F.3d at 263).

**v. Pre-indictment Delay**

Throughout his Petition and Objections, Scott continually argues that the Court should consider his pre-indictment delay along with the post-indictment delay in the *Barker* analysis. The state did not indict Scott until over two years after the crime was committed. The state prosecutor blamed this delay on the Hattiesburg Police Department in his opening statement at trial, explaining that they "dropped the ball." ECF NO. 8-3, pg. 81. However, as has been discussed in *supra* pp. 11-12, his right to speedy trial did not attach until he was indicted. Neither the Mississippi

Court of Appeals nor Magistrate Judge Isaac erred by not considering the post-indictment delay. *See United States v. Byrd*, 31 F.3d 1329, 1339 (5th Cir. 1994) ("[P]*re*-indictment delay does not raise a Sixth Amendment issue."). These findings are not an unreasonable application of federal law.

But, a lengthy pre-indictment delay can violate a defendant's Fourteenth Amendment due process rights. *Dickerson v. Louisiana*, 816 F.2d 220, 228 (5th Cir. 1987). S*ee also United States v. Marion*, 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971); *United States v. Lovasco*, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977). The primary protection against pre-indictment delay are statutes of limitation, though, so "claims of actual prejudice in violation of the due process clause of the [F]ourteenth [A]mendment are only examined where the applicable statute of limitations fails to offer relief for the preindictment delay." *Dickerson*, 816 F. 3d at 228 (citing *Stoner v. Graddick*, 751 F.2d 1535, 1541 (11th Cir.1985)). If the statute of limitation does not offer relief, "a defendant must demonstrate that the prosecutor intentionally delayed the indictment to gain a tactical advantage *and* that the defendant incurred actual prejudice as a result of the delay." *Byrd*, 31 F.3d at 1339 (citing *United States v. Neal*, 27 F.3d 1035 (5th Cir.1994)). In fact, "[t]he prejudice to be shown not only must be actual, rather than presumed or potential, but must also be 'substantial.'" *Crouch*, 84 F.3d at 1515.

No statute of limitations applies to the crimes for which Scott was indicted in Mississippi. *See* MISS. CODE § 99-1-5. Thus, Scott could assert a due process offense if he proved bad faith by the state to gain a tactical advantage and resulting substantial prejudice. But he has offered no evidence establishing that his pre-indictment delay resulted from anything other than a mistake by the Hattiesburg police. Likewise, despite his conclusory allegations to the contrary, Scott has made no showing of actual, much less substantial, prejudice stemming from the delay in prosecution, for

21

all the reasons discussed in *supra* Part III, Section C, Subsection iv. Scott cannot receive habeas relief on this ground.

### vi. Conclusion

The length of the delay weighs against the state. The reason for the delay could weigh against Scott or against the state, but not heavily. The assertion of the right weighs against Scott. And prejudice to the accused weighs against Scott. When the four *Barker* factors are weighed together, this Court cannot find that the Mississippi Court of Appeals' denial of Scott's constitutional speedy trial claim was contrary to, or an unreasonable application of, federal law. Nor does this Court find that the pre-indictment delay offended his Fourteenth Amendment due process rights. Ground Three is denied.

### D. Ground Four: Continuance

Two months before trial, the prosecutors requested a DNA analysis of blood found in the victim's home. The test was not completed by the crime lab until the evening before the trial.  In response, Scott's attorney requested a continuance the morning of the trial. The trial court denied the motion. Scott contends this violated his due process rights. The Mississippi Court of Appeals found that the state did not violate any discovery rules, and, even if the state did, any resulting error was harmless. *Scott*, 231 So. 3d at 1038. Magistrate Judge Isaac determined that the denial of Scott's continuance request was not a constitutional error mandating habeas relief. Scott objects, arguing that the prosecution indeed violated Uniform Rule of Circuit and County Court 9.04, despite the Court of Appeals holding to the contrary. Because the discovery rule was violated, he claims, the trial court had no discretion to deny his continuance. This objection is reviewed *de novo*.

"[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)). Federal habeas courts may not "reexamine state-court determinations on state-law questions." *Id.* This Court does not have the authority to review the Court of Appeals' state discovery ruling through habeas. And even if the prosecutors *did* violate Uniform Rule of Circuit and County Court 9.04, no habeas relief could be granted. *See Barton v. Quarterman*, No. CIV.A. H-07-1192, 2007 WL 3228107, at *9 (S.D. Tex. Oct. 30, 2007) ("Any failure to comply with Texas [discovery] law does not state a valid claim on federal habeas corpus review."); *see also Lawrence v. McCain*, No. CV 19-13300, 2020 WL 5167594, at *15 (E.D. La. Aug. 4, 2020), *report and recommendation adopted*, No. CV 19-13300, 2020 WL 5107298 (E.D. La. Aug. 31, 2020) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)) ("There is no general federal constitutional right to discovery in a criminal case, and, therefore, a claim that a prosecutor violated state discovery rules simply is not cognizable on federal habeas review.").

Interpreted very liberally, Scott's objection could be taken as a claim that the late disclosure of the DNA evidence by the state violated *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* forbids the prosecution from suppressing material exculpatory evidence. *Id.* at 1196-97. "To establish a Brady violation, a defendant must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016) (citing *United States v. Brown*, 650 F.3d 581, 587-88 (5th Cir. 2011)).

But Scott has not demonstrated that the DNA test was "suppressed" by the state. The state did not obtain the results of the DNA test until the day before the trial, and the state sent

Scott's attorney the results on the same day. Additionally, the record indicates that the state did not seek the DNA testing until Scott's attorney (at that time) suggested that he would use the absence of the testing to "punch holes" in the state's investigation. ECF NO. 8-3, pg. 56. To that end, the state filed a motion to compel Scott to provide a DNA sample on June 19, 2014— indicating that Scott was aware of this potential evidence at least two months before his trial.

Further, late production of evidence does not amount to suppression. *United States v. Swenson*, 894 F.3d 677, 683 (5th Cir. 2018). *See also Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) ("*Brady* claims involve the discovery, *after trial* of information which had been known to the prosecution but unknown to the defense. Because we find that the existence and contents of the route sheet were disclosed *at trial*, we hold that the prosecution did not suppress any evidence.") (emphasis added) (quotations omitted).  As the United States Supreme Court has not clearly established that the late disclosure of evidence violates due process, the possibility of habeas relief is foreclosed. *Henry v. Keith*, No. 5:14-CV-03064, 2018 WL 1278913, at *4 (W.D. La. Jan. 31, 2018), *report and recommendation adopted*, No. 5:14-CV-03064, 2018 WL 1278196 (W.D. La. Mar. 12, 2018).

Moreover, Scott also cannot demonstrate that this evidence was material. "[S]uppressed evidence is material if there is 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Pippin v. Dretke*, 434 F.3d 782, 789 (5th Cir. 2005) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)). Scott does not show how the DNA evidence affected the trial to such an extent. Scott's ultimate defense was not that he was never present at the victim's home, or even that no struggle ensued between him and the victim. Instead, his defense has simply been that he entered

the victim's home to collect drug money, rather than with the intent to sexually assault her. And—along with the blood—Scott's wallet, identification card, and social security card were found in the victim's home.

As to Magistrate Judge Isaac's primary finding that the Mississippi Court of Appeals did not unreasonably withhold relief based on the trial court's denial of the continuance, it is without clear error. And the finding is not contrary to law. "To warrant federal habeas relief, the denial of the continuance must have been not only an abuse of discretion but also 'so arbitrary and fundamentally unfair' that it denied [the defendant] due process, that is, rendered his trial fundamentally unfair." *McFadden v. Cabana*, 851 F.2d 784, 788 (5th Cir. 1988) (quoting *Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir. 1981)). Actual prejudice must be shown. *Id.* Thus, a defendant must show "a reasonable probability that the granting of a continuance would have permitted him to adduce evidence that would have altered the verdict." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985).

Scott argues that the continuance was necessary for his counsel to prepare an adequate cross examination of the state's DNA expert witness, or to obtain an expert witness of his own. But, as has been shown, the DNA evidence presented at his trial was essentially cumulative. Scott cannot show that the trial court's denial of the continuance prejudiced his defense. No habeas relief is warranted. Ground Four is denied.

**E. Ground Five: Jury Instruction S-11A**

Scott asserts that Jury Instruction S-11A improperly described state law regarding kidnapping and thus violated his due process rights under the Fourteenth Amendment. The Mississippi Court of Appeals found that the instruction accurately described state law and denied

relief. *Scott*, 231 So. 3d at 1037-38. Magistrate Judge Isaac noted the difficulty of winning a habeas claim through a jury instruction challenge and found that Scott could not show the instruction violated a constitutional right. Scott objects, arguing that the Report and Recommendation failed to adequately consider whether the instruction comported with the elements of kidnapping under state law. The Court reviews his objection *de novo*.

Jury Instruction S-11A stated: "The Court instructs the Jury that confinement and asportation (which means the moving of a victim against their will), are sufficient to support Kidnapping without regard to the distance moved, however slight, or time of confinement, no matter how short." Scott argued in the Petition that this statement of the law was misleading, because the instruction did not mention that the confinement and asportation must not be merely incidental to another crime. He cited *Cuevas v. State*, 338 So. 2d 1236, 1238 (Miss. 1976) for this contention, which held: "If forcible detention or movement is merely incidental to a *lesser* crime than kidnapping, such confinement or movement is insufficient to be molded into the greater crime of kidnapping." (Emphasis added).

"Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief." *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)). This is because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. Instead, this Court may only look for violations of the Constitution or federal law. *Id.* Thus, the "inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude." *Galvan*, 293 F.3d at 764 (quoting *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir.

1986)). The appropriate test for review of state jury instructions is whether an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 764-65 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)). To obtain relief, "a petitioner must show both that an instruction was deficient . . . and that there is more than a mere reasonable possibility that the deficiency contributed to the verdict." *James v. Mississippi*, No. 4:17-CV-129-DMB-JMV, 2019 WL 6684510, at *4 (N.D. Miss. Dec. 6, 2019).

Scott asserts that if the jury had been told that kidnapping cannot be merely incidental to a lesser crime, then the jury may have acquitted him of that charge. He notes that in its closing argument, the state told the jury: "At any point during these events if you believe beyond a reasonable doubt that he confined [the victim] and prevented her from going somewhere, it's kidnapping." ECF NO. 8-5, pp. 74-75. The problem for Scott is that neither the prosecutor's statement nor the jury instruction misstated Mississippi law. Rape is not a lesser crime than kidnapping in Mississippi—each carries up to life imprisonment. MISS. CODE. § 97-3-65; MISS CODE § 97-3-53. *See also Graham v. State*, 185 So. 3d 992, 995 (Miss. 2016) (upholding a conviction of kidnapping when it was committed along with forcible rape and sexual battery). Scott's proposed addition is irrelevant to his charges. Because he cannot show that Jury Instruction S-11A inaccurately describes or obscures the elements of kidnapping, Scott cannot show that the instruction infected the trial such that his conviction violated due process. Ground Five is denied.

## F. Ground Six: Jury Instructions for Counts I and III

Scott next contends that the jury instructions for Count I, attempted rape, and Count III, burglary, violated due process because the instructions did not define the elements of the

underlying crime of rape. The elements of both attempted rape[1] and burglary[2] required the state to prove that Scott acted with the intent to commit an underlying crime—in this case rape. Scott therefore argues that the jury instructions should have included the definition of rape along with the elements of the crimes actually charged. The Mississippi Court of Appeals found this ground procedurally barred because Scott failed to object to the instructions at trial. *Scott*, 231 So. 3d at 1034. The court also found this argument failed on plain error review, finding that state law merely required the instructions for each count to state that Scott acted with the intent to commit "rape" rather than actually define rape. *Id.* at 1035-36. Magistrate Judge Isaac determined that the state procedural bar was an independent and adequate state law ground foreclosing habeas review. Scott does not attempt to respond to the procedural default in his Objections. Nor does he offer any other new arguments on this ground, choosing instead to simply reassert the same claims that he made in his Petition. Therefore, the Court will examine Magistrate Judge Isaac's finding for clear error, rather than *de novo*. *See Edmond v. Collins*, 8 F.3d 290, 293 n.7 (5th Cir. 1993).

"[F]ederal habeas courts will not consider claims a petitioner has defaulted in state court absent a showing of cause for the default and resulting prejudice, or a showing that failure to consider the claim will result in a fundamental miscarriage of justice." *Smith v. Black*, 970 F.2d 1383, 1385–86 (5th Cir. 1992) (citing *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) and *Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)). Cause to excuse default exists when "some objective factor external to the defense impeded counsel's

---

[1] The elements of attempt in Mississippi are: "(1) *an intent to commit a particular crime*; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its commission." *Bucklew v. State*, 206 So. 2d 200, 202 (Miss. 1968) (emphasis added).

[2] The elements of burglary in Mississippi are: "breaking and entering the dwelling house or inner door of such dwelling house of another . . . *with the intent to commit some crime therein*." MISS. CODE. § 97-17-23 (emphasis added).

efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488.  Fundamental miscarriage of justice exists when a petitioner can show actual innocence. *Fairman v. Anderson*, 188 F.3d 635 (5th Cir. 1999) (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995)). A procedural default operates as an adequate and independent state law ground barring review if "the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989) (internal quotations omitted) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985)). A plain error review of the claim conducted by the state court "does not vitiate this bar." *Bell v. Epps*, No. CIV.A. 3:04CV212-B, 2008 WL 2690311, at *73 (N.D. Miss. June 20, 2008), *aff'd in part*, 347 F. App'x 73 (5th Cir. 2009). Mississippi's contemporaneous objection rule is an independent and adequate state ground foreclosing federal review. *Smith*, 970 F.2d at 1387.

Scott failed to make a contemporaneous objection to the challenged jury instructions. The Mississippi Court of Appeals expressly held that his claim was barred under Mississippi rules of procedure. The Mississippi Supreme Court affirmed the order with no opinion, and later denied Scott's motion to for leave to proceed in the trial court for post-conviction relief, stating simply that the claim was barred by *res judicata*. For procedural default analysis then, this Court considers the Mississippi Court of Appeals' opinion to be that of the "last state court rendering judgment." *See Rose v. Johnson*, 141 F. Supp. 2d 661, 697 (S.D. Tex. 2001) (collecting cases) ("When the last state court to render judgment on the merits does not disclose the basis for its opinion, a federal court will presume that the unexplained order follows the same reasoning as a prior state judgment,

unless the petitioner adduces strong evidence to rebut this presumption."). The procedural default bars this Court from reviewing this claim. Habeas relief cannot be granted.

Scott also cannot demonstrate that his procedural default should be excused. He does not argue that his actual innocence results in a fundamental miscarriage of justice, nor does he directly argue that he had cause to excuse his counsel's failure to object. However, he does allege in Ground Nine that his trial attorney was ineffective for failing to do so. Ineffective assistance of counsel may constitute "cause" in the procedural default context. *Coleman*, 501 U.S. at 755. Defendants "must bear the risk of attorney error," though, so simple "ignorance or inadvertence" by the attorney alone does not excuse the procedural default. *Id.* at 753 (internal quotations omitted) (quoting *Murray*, 477 U.S. at 488). Instead, "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation." *Id.* at 755. In other words, to overcome the default through a claim of ineffective assistance of counsel, a petitioner must actually demonstrate ineffective assistance of counsel. *See Cotton v. Cockrell*, 343 F.3d 746, 754-55 (5th Cir. 2003). As will be discussed in *infra* Part III, Section I, Subsection ii, Scott cannot show that his trial counsel's failure to object resulted in constitutional harm. Without excuse for his procedural default, this Court is precluded from reviewing this claim. The Report and Recommendation's finding on Ground Six is without clear error and is not contrary to law. Ground Six is denied.

## G. Ground Seven: Exclusion of Evidence

Scott next makes the case that he was unable to present a complete defense when the trial court limited certain testimony from his witness James Barnes. The trial court excluded testimony from Barnes that Barnes and the victim had at some point consumed illegal drugs together, and that the victim told Barnes that she and Scott had smoked marijuana together. The state court

deemed the former testimony irrelevant, and the latter hearsay without exception. The Mississippi Court of Appeals agreed with the trial court's rulings, and further noted that Barnes' hearsay testimony was inadmissible to impeach the victim because Scott failed to properly lay a foundation. *Scott*, 231 So. 3d at 1031-34. Magistrate Judge Isaac found that the Court of Appeals did not unreasonably apply federal law on this ground. Scott's objections to this portion of the Report and Recommendation merely reurge arguments he made in the Petition. Thus, the Court will only review Magistrate Judge Isaac's determination in Ground Seven for clear error or for being contrary to law.

Federal courts do not review the admissibility of evidence under state law in a habeas action. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998). Instead, relief may only be granted when an evidentiary error is so extreme that it results in fundamental unfairness. *Id.* "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (internal citations omitted) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)). But "only rarely" will this right be "violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S. 505, 509, 133 S. Ct. 1990, 186 L. Ed. 2d 62 (2013) (per curiam). Federal courts "have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability— even if the defendant would prefer to see that evidence admitted." *Crane*, 476 U.S. at 690 (citing *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). Therefore, a

defendant does not have an "unfettered right" to offer inadmissible evidence, so long as the state

evidentiary restriction is not "arbitrary or disproportionate to the purpose it is designed to serve."

*Diggins v. Vannoy*, No. CV 17-3416, 2018 WL 8919912, at *15 (E.D. La. June 19, 2018), *report and*

*recommendation adopted*, No. CV 17-3416, 2019 WL 3457265 (E.D. La. July 31, 2019) (first quoting

*Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988); and then *Kittelson v.*

*Dretke*, 426 F.3d 306, 320 (5th Cir. 2005)).Wrongful exclusion of evidence by the trial court only

rises to fundamental unfairness if the evidence was "crucial, critical, and highly significant."

*Porretto v. Stalder*, 834 F.2d 461, 465 (5th Cir. 1987) (citing *Skillern v. Estelle*, 720 F.2d 839, 852

(5th Cir. 1983)).

      Scott argues that the exclusion of this evidence deprived him of his right to present a

complete defense because Barnes' testimony would have bolstered his theory that he went to the

victim's home to recover drug money rather than rape her. But as the Mississippi Court of Appeals

observed, Scott cannot show how testimony that Barnes smoked marijuana with the victim at some

indeterminate point could be relevant to the events of July 3, 2009. *Scott*, 231 So. 3d at 1032. This

evidence cannot be described as "crucial, critical, and highly significant."[3] Moreover, a state

decision must "result[] in a decision that was contrary to, or involved an unreasonable application

---

[3] Scott also argues that the evidence that Barnes and the victim had smoked marijuana together at some point should
have been admitted to impeach the victim's testimony that "she never used drugs a day in her life." [14], pg. 12. That
misrepresents the victim's testimony. The actual testimony was:

    Q: Okay. At that time in your life, were you a pot smoker?
    A: No.
    Q: Not at that time?
    A: Not at that time.
    Q: And what about pills? Did you have any other trouble with pills or any other drugs that you used?
    A: No.

ECF NO. 8-4, pg. 31. Regardless, this issue is at best collateral to Scott's defense that he entered her home to collect
drug money rather than rape the victim. Even to impeach the victim, this evidence is hardly so "crucial, critical, and
highly significant" such that its denial violated Scott's constitutional rights.

of, clearly established Federal law, *as determined by the Supreme Court of the United States*" to be overturned through habeas. 28 U.S.C. § 2254(d) (emphasis added). Accordingly, the Fifth Circuit on habeas review recently upheld a state court's decision to deny evidence it found irrelevant, stating, "[T]he Supreme Court has not decided any case either squarely address[ing] the discretionary exclusion of evidence and the right to present a complete defense or establish[ing] a controlling legal standard for evaluating such exclusions." *Lucio v. Lumpkin*, 987 F.3d 451, 470 (5th Cir. 2021) (quoting *Brown v. Horell*, 644 F.3d 969, 983 (9th Cir. 2011)). Thus, the state court's refusal to admit testimony that it determined irrelevant did not deny Scott the right to present a complete defense.

Likewise, the trial court's denial of Barnes' hearsay testimony did not impermissibly taint the fundamental fairness of the conviction. Barnes would have testified that several weeks before July 3, 2009, he saw Scott and the victim together in Scott's truck, and the victim told Barnes that they were smoking marijuana. The Mississippi Court of Appeals found that this statement did not fit into any hearsay exceptions. *Scott*, 231 So. 3d at 1032-34. The state enforces the hearsay rule to screen unreliable evidence. *See Rogers v. State*, 95 So. 3d 623, 630 (Miss. 2012) ("Hearsay generally is not admissible because it is considered unreliable and untrustworthy."). This is undoubtably a legitimate interest. *See United States v. Scheffer*, 523 U.S. 303, 309, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998) ("State and Federal Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial."). Furthermore, the trial court's application of the rule in this case was not disproportionate to its legitimate interest in filtering untrustworthy testimony. The trial court did allow Barnes to testify that he had witnessed Scott and the victim together in the truck. Scott was also allowed to cross-examine the victim

herself about her alleged drug use with him, which she denied. The trial court did not refuse Scott a complete defense.

Scott also urges that the hearsay evidence should have been admitted to contradict the victim's statements denying drug use with Scott. The Mississippi Court of Appeals found that Scott failed to properly lay the foundation to impeach the victim as required by Mississippi Rule of Evidence 613(b). This rule, identical to FED. R. EVID. 613(b), serves the legitimate purpose of giving witnesses opportunity to adequately explain or deny apparently inconsistent statements. *See Everett v. State*, 835 So. 2d 118, 123 (Miss. Ct. App. 2003) (quoting *Whigham v. State*, 611 So. 2d 988, 994 (Miss. 1992) *overruled on other grounds by Dora v. State*, 986 So. 2d 917 (Miss. 2008)) (noting that foundation for impeachment must be laid because "it is only fair that the witness, while he is on the stand, be asked about it, and be given an opportunity to explain or deny it"). Scott cannot demonstrate how the state court's application of a widely accepted evidentiary rule similar to the rule applied in federal courts resulted in fundamental unfairness. *See Jackson*, 569 U.S. at 510 (denying habeas relief when state court excluded extrinsic evidence offered by defendant in part because the state evidence rule applied was widely accepted and similar to the federal rule on point). Magistrate Judge Isaac's finding that Scott should not receive habeas relief on this ground lacks clear error and is not contrary to law. Ground Seven is denied.

## H. Ground Eight: Weight and Sufficiency of the Evidence

Scott claims that the evidence presented at trial was insufficient to support his conviction, or, alternatively, that he was convicted against the overwhelming weight of the evidence. Magistrate Judge Isaac noted that weight of the evidence claims are not cognizable on habeas review. Scott does not object to her finding in this regard, and it is without clear error and not

contrary to law. "[T]he weight of the evidence is the exclusive province of the jury." *Hebert v. Rogers*, 890 F.3d 213, 225 (5th Cir. 2018) (quoting *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)). Thus, courts have long recognized that the weight of the evidence may not be challenged by habeas. *Johnson v. Streeter*, No. 2:12CV62-MPM-SAA, 2012 WL 3683392, at *8 (N.D. Miss. Aug. 24, 2012) (quoting *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985)); *see also Lewis v. Mississippi*, No. 3:19CV120-MPM-DAS, 2021 WL 1988200 at *12 (N.D. Miss. May 18, 2021) (collecting cases).

A challenge to the sufficiency of the evidence, on the other hand, is cognizable on habeas review and is referred to as a *Jackson* claim. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Examining this issue, the Mississippi Court of Appeals held that "viewing the evidence in the light most favorable to the State, the evidence was sufficient to prove every element of each of the crimes charged beyond a reasonable doubt." *Scott*, 231 So. 3d at 1039-40. Magistrate Judge Isaac found that this resolution was not contrary to, nor an unreasonable application of the applicable constitutional law. Scott objects, stating that the Report and Recommendation "failed to include how the state proved with sufficient evidence the essential elements of the crimes charged beyond a reasonable doubt, [instead] only reciting from the Court of Appeals opinion." [14], pg. 18. He goes on to repeat the same arguments that appeared in the Petition. To the extent Scott argues that Magistrate Judge Isaac did not adequately consider his arguments, this Court shall review his objection *de novo*.

A federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

The Supreme Court has explained as follows:

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Coleman v. Johnson*, 566 U.S. 650, 651, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012) (internal quotations and citations omitted). A federal court may consider "whether the inferences drawn by a jury were rational, as opposed to being speculative or insupportable, and whether the evidence is sufficient to establish every element of the crime." *United States v. Vargas-Ocampo*, 747 F.3d 299, 302 (5th Cir. 2014). But, "a reviewing court . . . 'must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Cavazos v. Smith*, 565 U.S. 1, 6, 132 S. Ct. 2, 181 L. Ed. 2d 311 (2011) (quoting *Jackson*, 443 U.S. at 326). The Mississippi Court of Appeals carefully reviewed Scott's sufficiency of the evidence claim and sustained his conviction. *Scott*, 231 So. 3d at 1039-40. The state court's determination was not contrary to, nor an unreasonable application of, *Jackson*.

Scott challenges his burglary conviction, arguing that the jury was not presented with sufficient evidence to find that he broke into the victim's home with the intent to rape the victim. Burglary in Mississippi is defined as "breaking and entering the dwelling house or inner door of such dwelling house of another . . . *with the intent to commit some crime therein*." MISS. CODE. § 97-17-23 (emphasis added). Scott claims that the state failed to meet its burden to prove the specific intent element of burglary. The evidence presented at trial showed that after Scott entered the home, he grabbed the victim, made lewd comments, ripped at her clothes, dragged her to her

bedroom, and attempted to throw her onto her bed. Scott fails to articulate how no rational juror could find that he intended to rape the victim.

Next, Scott argues the jury lacked sufficient evidence to find that he committed an overt act toward the attempted rape. Attempt in Mississippi requires "(1) an intent to commit a particular crime; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its commission." *Bucklew v. State*, 206 So. 2d 200, 202 (Miss. 1968). Mississippi has determined that lewd suggestions, physically grabbing the victim, and attempting to carry the victim away are sufficient in combination to meet the direct act requirement for attempted rape. *Harden v. State*, 465 So. 2d 321, 322 (Miss. 1985). Scott cites *Ishee v. State*, 799 So. 2d 70 (Miss. 2001) for the proposition that the evidence of his actions presented at the trial did not demonstrate an overt act. But the *Ishee* court found that the defendant's sexual proposition to a young child, without any physical conduct, was sufficient to support a conviction of attempted sexual battery. *Id.* at 73-74. In light of Mississippi's interpretation of its attempt law, a rational trier of fact could find that Scott committed an overt act.

Scott also argues that he abandoned his attempted rape. In Mississippi, the failure to consummate an attempt must result from an extraneous source; thus, if a defendant voluntarily desists from his course of action, then he is not guilty of attempted rape. *Ross v. State*, 601 So. 2d 872, 874 (Miss. 1992). In *Ross*, the Mississippi Supreme Court reversed an attempted rape conviction when the defendant voluntarily ceased his alleged rape attempt after the victim invoked her young daughter and begged him to stop. *Id.* Scott avers that the state court should have applied *Ross* to his case because the victim testified that Scott halted his attempt to rape her after she offered to pay him.

The Mississippi Court of Appeals did not explicitly compare these facts to *Ross*, but it impliedly rejected this argument by stating: the "evidence is sufficient to support his conviction of attempted rape." *Scott*, 231 So. 3d at 1040. This Court must defer to the Mississippi Court of Appeals' interpretation of the legal definition of attempted rape. "State courts are the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). Thus, federal habeas courts must follow a state's determination of its own law. *Johnson v. Cain*, 347 F. App'x 89, 93 (5th Cir. 2009). *See also Jackson*, 443 U.S. at 324 n.16 ("[T]he [sufficiency of the evidence] standard must be applied with explicit reference to the substantive elements of the criminal offense *as defined by state law*.") (emphasis added). This Court's role in a *Jackson* review is simply to determine whether the jury was presented with enough evidence to rationally find Scott guilty of a crime under the elements defined by state law. The Mississippi Court of Appeals determined that the evidence supported attempted rape.

The victim testified that after dragging her to her bedroom and trying to throw her onto her bed while tearing at her shirt and making suggestive comments, Scott did let her go free when she offered him money. ECF NO. 8-4, pg. 12. In fact, immediately thereafter, she tried to escape through a window, and he pulled her back inside. *Id.* at 12-13. The victim testified that Scott choked her until she was unable to put up any more of a struggle, and then dragged her into the kitchen to retrieve her purse. *Id.* at 13-14. Scott was dissatisfied with the small amount of cash in her purse, so he forced her into her car so that they could go to the ATM. *Id.* at 16-17. And even in the car, she testified, Scott tried "to touch on" her. *Id.* at 17. At no point did the victim testify that Scott actually agreed that he would not finish his attempt to rape her if she gave him money. The jury could have rationally determined that Scott was only prevented from raping her because she

managed to escape from the vehicle, rather than because she offered to pay him. And this Court

must defer to that resolution. *Cavazos*, 565 U.S. at 6. The jury had sufficient evidence to rationally

convict Scott of attempted rape under state law.

Finally, Scott argues that his kidnapping conviction also resulted from insufficient

evidence. He makes essentially the same argument that he made against Jury Instruction S11-A in

Ground Five—that confinement and asportation cannot be merely incidental. This argument fails

for the reasons discussed in *supra* Part III, Section E. Kidnapping in Mississippi occurs when

"[a]ny person who, without lawful authority..., shall forcibly seize and confine any other person."

MISS. CODE § 97-3-53. The testimony at trial revealed that Scott grabbed the victim in a chokehold

and dragged her to her bedroom; again grabbed her when she tried to jump out of a window, pulling

her back inside and into the kitchen; and grabbed her yet again to prevent her from escaping a

moving car. A rational jury could convict Scott of kidnapping. Habeas relief is not warranted.

Ground Eight is denied.

## I. Ground Nine: Ineffective Assistance of Counsel

Scott alleges that his counsel provided ineffective assistance for seven reasons: (1) failing

to impeach the victim with her prior inconsistent statement; (2) failing to object to the jury

instructions defining Counts I and III; (3) failing to provide a basic defense/ failing to investigate;

(4) failing to present an abandonment instruction; (5) failing to provide Scott with relevant

evidence needed to make an informed decision whether to accept a plea agreement; (6) allowing

the prosecution to present false evidence; and (7) failing to hire a DNA expert. Scott first brought

this claim in a pro se motion for post-conviction collateral relief filed with the Mississippi Supreme

Court. The Mississippi Supreme Court issued a brief order denying relief, stating that this issue was "without merit."

"In exercising our habeas review under § 2254(d), we review only the ultimate decision of the state court, and not the specific contents of its reasoning or opinion." *Blanton v. Quarterman*, 543 F.3d 230, 236 (5th Cir. 2008). To prove ineffective assistance of counsel, a petitioner must show that "counsel's representation 'fell below an objective standard of reasonableness,'" and "but for his counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Id.* at 235 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). The *Strickland* analysis is deferential, for "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  Succeeding with a *Strickland* claim is doubly as difficult on habeas review due to 28 U.S.C. § 2254's likewise deferential standard. *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). In order to merit federal habeas relief, a state court's adjudication of an ineffective assistance of counsel claim must not only be incorrect, but must be "an unreasonable application of *Strickland*." *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018) (brackets omitted) (quoting *Harrington*, 562 U.S. at 101).

### i. Failure to Impeach the Victim

Scott argued that his trial counsel was ineffectual because she did not impeach the victim with the investigating police officer's report. In the report, the officer wrote that the victim told him that "Scott threw her on the bed and attempted to tear her clothing off." [2-1], pg. 17. The victim also states in the report that "Scott pushed her back onto the bed" again after she tried to

escape through a window. *Id.* at pg. 18. At trial, the victim testified, "We walked into the bedroom, and he just kind of flung me. Like, the bed was there, and he just kind of flung me through, and I just pushed off the bed. It was the—it was the instinct to stay away from the bed." ECF NO. 8-4, pg. 11. On cross examination, the victim denied ever being laid on the bed or telling the police that Scott was in the bed on top of her. ECF NO. 8-4, pg. 33. Scott contends that defense counsel's failure to impeach the victim on this point prejudiced him because it would have called the victim's entire testimony into question. Magistrate Judge Isaac found that the attorney's decision not to impeach the victim with this evidence was a strategic decision that did not violate Scott's right to representation, and that Scott was not prejudiced. Scott objects, disputing that his attorney's decision not to impeach was valid trial strategy. The Court reviews this objection *de novo*.

A strategic decision not to present "double-edged" evidence "is objectively reasonable, and therefore does not amount to deficient performance." *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997). *See also Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006) (quoting *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004)) ("[A] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."). This police report corroborated in detail every other piece of the victim's testimony. The report also described her wounded, bloody appearance, and the tearing on her clothing. Defense counsel may have believed that introducing this report would have done more harm to Scott's case than good. Despite Scott's assertions to the contrary, his trial attorney made a strategic decision not to use the police report for impeachment.

Further, Magistrate Judge Isaac did not clearly err in determining that Scott did not suffer prejudice from his counsel's decision not to impeach the victim. The Court submits that the discrepancy between the police report and the victim's testimony is not as earth-shattering as Scott makes it out to be. Moreover, the facts the victim alleged in the police report were *worse for Scott* than the facts the victim testified to at trial. In fact, at trial, the victim did not testify that Scott got on top of her on the bed. Consider the case Scott cites to show he is entitled to relief: *Rutland v. State*, 785 S.E. 2d 350 (S.C. 2016). There, South Carolina found ineffective assistance of counsel where an attorney failed to impeach the one neutral eyewitness's trial testimony that the murder victim was unarmed with her prior statement to police that the victim had a gun and pulled it on the defendant. *Id.* at 353-54. The *Rutland* witness' prior statement was far more beneficial—and contradictory—to the defendant's self-defense theory than her trial testimony. Here, in contrast, the victim's statement to the police that Scott climbed on top of her in the bed—made much closer in time to the events alleged than her trial testimony over five years later—could have been more harmful than the testimony the jury actually heard. Scott's attorney cannot be faulted for strategically choosing not to remind the victim of, or allow the jury to fully consider, her more damaging original statements. This claim does not support a finding of ineffective assistance or entitle Scott to habeas relief.

**ii.  Failure to Object to Jury Instructions on Counts I and III**

Scott claims that his trial attorney provided ineffective assistance by failing to object to the jury instructions relating to Counts I and III. These instructions, which described the elements of burglary and attempted rape, left out the elements of rape. As discussed in *supra* Part III, Section F, Scott procedurally defaulted on his direct challenge to the instructions. Nevertheless, the

42

Mississippi Court of Appeals also found on plain error review that the instructions adequately defined Mississippi law related to Scott's charges. *Scott*, 231 So. 3d at 1035-36. Magistrate Judge Isaac thus found that any attempt to object to the instructions would have been futile. Scott's objection to the Report and Recommendation's finding here merely reurges the arguments from his Petition. This Court will review Magistrate Judge Isaac's determination for clear error or for being contrary to law.

The Sixth Amendment does not require an attorney to make futile objections. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *see also Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). The Mississippi Court of Appeals determined that the instructions given were proper. Magistrate Judge Isaac rightly refused to fault Scott's counsel for not objecting to proper jury instructions. Furthermore, Scott fails to explain how the outcome of his trial might have been different had the instructions been changed. Conclusory assertions of prejudice are insufficient to show ineffective assistance of counsel; instead, "the defendant must 'affirmatively prove prejudice.'" *Tuesno v. Cain*, 198 F.3d 242 (5th Cir. 1999) (quoting *Strickland*, 466 U.S. at 693). Scott cannot show ineffective assistance for failing to object to these instructions.

### iii. Failure to Investigate

Scott contends that his attorneys were ineffective for their collective failure to investigate. He argues that because he was without counsel until 2012, his attorneys could not adequately have investigated the events of July 3, 2009. He also alleges that after he did obtain counsel, his attorneys collectively failed to discover certain witnesses and evidence that he claims could have been presented in his defense. Magistrate Judge Isaac found that despite his conclusory allegations of

investigative malpractice, Scott could not demonstrate any prejudice resulting from the alleged failures to investigate. Scott objects, arguing that the pre-arraignment delay in obtaining counsel created such a gap in time that "would make even the most skilled attorney deficient." [14], pg. 17. He also alleges that his attorneys were simply preparing for a plea bargain, rather than a trial. The Court will review these objections *de novo*.

The Sixth Amendment right to counsel "attaches at the initiation of adversary judicial criminal proceedings." *United States v. Gouveia*, 467 U.S. 180, 189, 104 S. Ct. 2292, 81 L. Ed. 2d 146 (1984). Scott was not entitled to representation until his indictment on September 26, 2011. He cannot argue that this right was violated before it attached. Additionally, though he argues that his attorneys could not have possibly provided effective assistance because of their two-year disadvantage, he does not explain what an attorney appointed closer in time to the alleged crime would have accomplished that his actual attorneys did not.

As to Scott's claim that his attorneys failed to actually prepare for a trial, Scott similarly cannot demonstrate prejudice beyond mere conclusory allegations. "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)). Scott argues that further investigation would have resulted in evidence that discredited a witness's description of Scott, but Scott's defense theory has never been mistaken identity. Next, Scott claimed that he was aware of at least four witnesses who could establish that a prior relationship existed between Scott and the victim. But "any error which occurred due to [a defendant's] withholding this information from his attorney was not the fault of counsel and did not constitute deficient performance." *Sharp v. Johnson*, 107 F.3d 282, 286 (5th Cir. 1997). Scott

also alleges that the police failed to discover illegal drugs in the victim's home or car and lost evidence, but does not explain how his attorney could have prevented the loss of such evidence or compelled the police to discover the supposed drugs. Because Scott "has been unable to show what further investigation would have revealed and how it would have helped him," this ground lacks merit. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

### iv. Failure to Present an Abandonment Instruction

Scott next alleges that his counsel failed to provide effective assistance by not submitting an abandonment jury instruction for attempted rape. This argument relates to his claim discussed in *supra* Part III, Section H. His counsel was not ineffective for the reasons discussed therein. Magistrate Judge Isaac additionally found that a voluntary abandonment instruction would have been inconsistent with Scott's defense that he never acted with the intent to rape the victim. Scott does not object to this finding beyond reasserting the same arguments that he made in the Petition. Magistrate Judge Isaac's finding regarding this claim was not clearly erroneous or contrary to law. Scott's counsel did not act unreasonably by choosing not to undercut the defense theory. *See Wilson v. Cockrell*, 70 F. App'x 219, 228 (5th Cir. 2003) (finding that counsel was not deficient by not presenting a jury instruction inconsistent with the defense theory). This claim too lacks merit.

### v. Failure to Provide Petitioner with Evidence Needed to Make an Informed Decision to Reject a Plea Agreement

Scott alleges that he was offered a ten-year plea bargain, which he rejected. He argues that had his counsel informed him of the DNA evidence the state would later present at trial, he would have accepted the plea. However, in his own memorandum in support of his claims, Scott admits that the state did not pursue any DNA testing until *after* he rejected the plea bargain. [2], pg. 54. Magistrate Judge Isaac therefore found that Scott's attorney could not be deficient for failing to

provide Scott with something that did not exist. As with the previous claim, Scott does not offer any objections with new substance. Magistrate Judge Isaac did not clearly err in determining that Scott's attorney was not constitutionally deficient in this regard. Nor is this finding contrary to law.

### vi.  Failure to Prevent the Prosecution from Presenting False Evidence

Scott agues in his sixth ineffective assistance of counsel claim that his trial attorney ineffectually allowed the state to present the jury with false evidence. This claim is based on the same argument as his first ineffective assistance of counsel claim: that his attorney should have impeached the victim with her statement to police. Thus, for the reasons discussed in *supra* Part III, Section I, Subsection i, Scott fails to show ineffective assistance of counsel here.

### vii. Failure to Hire a DNA Expert

Finally, Scott contends his trial attorney provided ineffective assistance by failing to hire an expert witness to rebut the state's DNA evidence. The prosecution did not seek DNA testing until two months before trial. The results were not returned until the eve of trial, and, as discussed in *supra* Part III, Section D, Scott's attorney did request a continuance the next day to seek an expert. However, the continuance was denied. Magistrate Judge Isaac found Scott's allegation that his attorney acted ineffectively by failing to seek an expert witness earlier lacked merit, because he could not show that "testimony by a defense DNA expert[] would have changed the jury's verdict." [13], pg. 39 (quoting *Wolfe v. Dretke*, 116 F. App'x 487, 494-95 (5th Cir. 2004)). Scott objects, noting that his trial lawyer told the judge that if a continuance was not granted, she could not effectively defend Scott. Thus, according to Scott, either his "counsel was deficient or the state was in grave error." [14], pg. 18. This objection is reviewed *de novo*.

Scott presents a false binary. The trial court did not violate Scott's constitutional rights by denying his motion for continuance for all the reasons already stated in    Part III, Section D. Likewise, Scott's trial attorney did not ineffectually defend him without the benefit of a defense expert witness. "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *see also Burns v. Epps*, 342 F. App'x 937, 939 (5th Cir. 2009) ("[Petitioner's] ineffective-assistance claim with regard to counsel's failure to secure a[n] . . . expert must also fail, as [he] has failed to specifically indicate what assistance such an expert could have provided"). Scott fails to demonstrate that an expert witness testifying for the defense would have contradicted the state's evidence. Moreover, as has been discussed at length, the DNA evidence presented by the state was essentially cumulative. It merely matched the blood found at the victim's home to Scott. Scott has never argued that he did not enter the victim's home or engage in a struggle with her. Further, his wallet and identification were also found in the home. As with all his other ineffective assistance of counsel claims, Scott cannot show how the outcome of his trial would have differed had a defense expert testified.

### viii. Conclusion

Scott has failed to demonstrate unreasonable conduct or resulting prejudice from his attorneys' performance. The Mississippi Supreme Court did not unreasonably reject his *Strickland* grounds for relief. Scott's inadequate assistance of counsel claims were properly rejected in the Report and Recommendation. Ground Nine is denied.

**J. Ground Ten: Cumulative Error**

Last, Scott alleged that the cumulative effect of the errors at trial together demands habeas relief. He first raised cumulative error in his Motion for Judgment Notwithstanding the Verdict, which was denied by the trial court on October 13, 2014. ECF NO. 8-2, pg. 63. Scott did not bring this claim back up until his request for state post-conviction relief, which, as discussed previously, was denied summarily by the Mississippi Supreme Court. Magistrate Judge Isaac found that "that Scott's claims do not individually or in combination amount to a constitutional violation." [13], pg. 42. Because Scott does not substantively object to this finding, the Court will review it for clear error and for being contrary to law.

Claims of cumulative error rarely result in habeas relief. *United States v. De Nieto*, 922 F.3d 669, 681 (5th Cir. 2019) (quoting *United States v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012)). "Cumulative error justifies reversal only when errors so fatally infect the trial that they violated the trial's fundamental fairness." *Delgado*, 672 F.3d at 344 (internal quotations omitted) (quoting *United States v. Fields*, 483 F.3d 313, 362 (5th Cir. 2007)). To mount a successful cumulative error claim, a petitioner must show:

> First, the cumulative error theory must refer to actual errors committed in the state trial court, and not merely to unfavorable rulings or events. Second, the error must not have been procedurally barred from habeas corpus review. Third, errors of state law, including evidentiary errors, are not cognizable in habeas corpus unless they rise to constitutional dimension. Errors of state law rise to constitutional dimension only if they so infused the trial with unfairness as to deny due process of law. Fourth, the federal court must review the record as a whole to determine whether the errors more likely than not caused a suspect verdict.

*Phillips v. Hargett*, 12 F.3d 208 (5th Cir. 1993) (internal quotations and citations omitted) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir.1992) (en banc), *cert denied*, 508 U.S. 960, 113 S. Ct. 2928, 124 L. Ed. 2d 679 (1993)).

Scott has failed to demonstrate that any of the errors he alleged to have occurred at his trial individually rose to a constitutional magnitude. Likewise, Scott's claims cannot be molded together to form a constitutionally fatal infection of the verdict. Magistrate Judge Isaac carefully reviewed the record and found the verdict to be based on the overwhelming evidence presented against Scott, rather than the product of cumulative unconstitutionality. The Report and Recommendation's denial of Scott's final ground was not clearly erroneous or contrary to law. Ground Ten is denied.

## IV. CONCLUSION

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Report and Recommendation [13] entered by United States Magistrate LaKeysha Greer Isaac is ADOPTED.

IT IS, FURTHER, ORDERED AND ADJUDGED that the Petition for Writ of Habeas Corpus [1] filed by James Wesley Scott is DENIED, and this action is DISMISSED WITH PREJUDICE. [4]

SO ORDERED AND ADJUDGED, this the 30th day of September, 2021.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE

---

[4] The Court notes, that for all the reasons set forth herein, even if every claim were considered under a *de novo* review, Scott's Petition would be denied and dismissed with prejudice.